858 P.2d 429

**Jason MARTINEZ, Personal Representative of James H. Block, Deceased, Petitioner–Appellee,**

v.

**Beverley S. BLOCK, Respondent–Appellant.**

**No. 13402.**

Court of Appeals of New Mexico.

July 29, 1993.

Judith C. Herrera, Herrera, Baird & Long, P.A., Santa Fe, for petitioner-appellee.

David L. Walther, David Henderson, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Santa Fe, for respondent-appellant.

*OPINION*

BIVINS, Judge.

Beverley S. Block (Wife) appeals from the final decree of the trial court resolving the property issues in an action for dissolution of marriage. On appeal, she argues: (1) that the trial court erred in determining that $5000 of the proceeds of the sale of the Ojo Caliente residence was community

property to be split between the parties; and (2) that the trial court erred in subjecting her separate property in Cerrillos to an equitable community lien in the amount of $39,225. We discuss the facts relevant to each issue in our discussion of the issue. We affirm the order of the trial court determining that $5000 of the proceeds of the sale of the Ojo Caliente residence was community property. We reverse the order of the trial court subjecting Wife's separate property residence in Cerrillos to an equitable community lien.

James H. Block (Husband) died during the pendency of this appeal and his personal representative was substituted. Notwithstanding this substitution, we will refer to the parties as they appeared below.

## I. *The Ojo Caliente Residence*

■ The Ojo Caliente residence was purchased by the parties during the marriage. It was sold during the pendency of dissolution proceedings, and the proceeds were deposited in a bank account pending determination of an appropriate distribution by the trial court. At the outset of the hearing on the merits, the parties informed the court that they had agreed that the Ojo Caliente residence was community property, and had agreed to divide equally all but $5000 of the proceeds. Thus, the only issue presented to the trial court concerned distribution of the $5000.

It was undisputed below that the $5000 represented an amount equal to a loan from Wife's father. The loan was used for the down payment on the Ojo Caliente residence. The trial court found that the loan created a community debt, and this finding is not challenged on appeal. Some time after the acquisition of the Ojo Caliente residence and before the parties separated in September 1989, Wife's parents died. At the hearing, Wife testified that the operative will was her mother's will because her father predeceased her mother. A copy of her mother's will was admitted at the hearing without objection. The will provides in pertinent part: "I forgive any debts owed to my husband and me by any of our children." At the hearing, both

parties testified that they believed that the will provision forgave the entire amount of the debt.

At the hearing below and on appeal, Wife argues that the forgiveness of the $5000 loan in her mother's will amounts to a separate bequest to her of the entire amount of the loan. *See* NMSA 1978, § 40–3–8(A)(4) (Repl.Pamp.1989) ("property acquired by either spouse by gift, bequest, devise or descent" is separate property). Husband challenges this contention.

On the facts of this case, we do not believe that the trial court was required to treat the forgiveness of the debt as a separate bequest to Wife. When a parent has loaned money to a child and the child's spouse for the purchase of real property, and then the parent dies, leaving a will forgiving debts owed by the child to the parent, courts have interpreted the will provision in question to forgive the entire amount of the debt, even though the debt was a joint debt and the spouse was not mentioned in the will. *See Trott's Estate v. Hanson,* 294 N.W. 777, 778, 780 (Iowa 1940); *In re Zielinski's Will,* 193 Misc. 826, 84 N.Y.S.2d 89, 91–92 (Sur.Ct.1948). Under these circumstances, we agree with Husband that the will provision forgiving the community debt merely created a community asset of $5000. Thus, we hold that the trial court did not err in dividing the $5000 equally between the parties.

## II. *Cerrillos Separate Property*

■ After her parents died, Wife used part of her inheritance to purchase a house in Cerrillos. Wife and Husband moved into the Cerrillos home under a lease purchase agreement in May 1988. The purchase was consummated on August 1, 1988. The documents connected with the transaction show that the purchase price was $85,000, and that Wife took title as "Beverley Block, a married woman dealing in her sole and separate property." The parties stipulated that the purchase price was paid from her sole and separate funds.

After the house was purchased, Wife undertook extensive renovations and im-

provements to the property. These included installation of a wood stove, skylights, ceiling fans, windows, doors, a patio, exterior stairs and walls, a hot tub, a gazebo, a cabana, a swimming pool, a septic tank, and the remodelling of the garage. Much of the work involved was done by persons hired and paid by Wife from her separate funds. It is undisputed that Husband worked on the renovations and improvements, although the extent of his work on the property was contested at trial.

The parties stipulated that Wife spent $93,486.43 of her sole and separate funds on improvements to the Cerrillos property. Ultimately, the parties agreed that the value of the Cerrillos property was equal to the amount of money spent purchasing and remodelling it, $178,486.43. Both parties recognized the difficulty of obtaining an appraisal of the value of Husband's work on the renovations. Thus, Husband argued that the trial court should consider the value of his services instead of the value added to the property by his labor.

The trial court found and concluded that the Cerrillos home was Wife's sole and separate property, and was subject to a community equitable lien of $39,225. The trial court indicated that "[t]his lien is based upon the value of the community labor of the parties, and substantial justice is accomplished in establishing the lien in said amount."

On appeal, Wife contends that the community is entitled to a lien against the Cerrillos home only if the community can demonstrate that community funds or labor enhanced the value of the property or increased the equity interest in the property. Husband contends that he is not required to show an enhanced value of the property due to his labor, and that the trial court is entitled to use any method of apportionment that achieves substantial justice on the facts of each case. As discussed below, we agree with Wife that under New Mexico law the community is entitled to an equitable lien against her separate property only to the extent that the community can show that its funds or labor enhanced the value of the property or increased the

equity interest in the property. Because Husband failed to show that his labor enhanced the value of the property or increased the equity interest in the property, we reverse the trial court on this issue.

■ We recognize that the labor of the parties belongs to the community rather than the individuals. *See Laughlin v. Laughlin*, 49 N.M. 20, 33, 155 P.2d 1010, 1018 (1944). However, the simple fact that the community has expended funds or labor on a separate asset does not, by itself, give rise to either a community interest in the asset or a right to reimbursement for money spent on the asset. For example, it is well settled that the community has no right to be reimbursed for funds spent paying mortgage interest, taxes, or insurance premiums on the asset. *Chance v. Kitchell*, 99 N.M. 443, 445, 659 P.2d 895, 897 (1983); *Dorbin v. Dorbin*, 105 N.M. 263, 268, 731 P.2d 959, 964 (Ct.App.1986). Our Supreme Court has explained the policy behind this as follows:

> The value of real property is generally represented by the owner's equity in it. The equity value does not include finance charges or other expenses incurred to maintain the investment. Therefore, taxes, insurance, interest and garbage and sewer expenditures are not to be credited to Defendant.

*Chance*, 99 N.M. at 445, 659 P.2d at 897 (citation omitted).

In addition, we think Husband's argument demonstrates a misunderstanding of the concept of apportionment under New Mexico law. This Court has previously had occasion to distinguish between claims for apportionment and claims for reimbursement. *See Dorbin*, 105 N.M. at 265–68, 731 P.2d at 961–64. Apportionment is appropriate only when an asset has been acquired or its equity value increased through the use of both separate and community funds. *See Chance*, 99 N.M. at 445, 659 P.2d at 897; *Dorbin*, 105 N.M. at 268, 731 P.2d at 964. What is apportioned between separate and community interests is the increase in the value of the asset. *See Portillo v. Shappie*, 97 N.M. 59, 62–64, 636 P.2d 878, 881–83 (1981) (the amount of

an equitable community lien on property is equal to the increase in value attributable to community funds and labor); *Bayer v. Bayer*, 110 N.M. 782, 786, 800 P.2d 216, 220 (Ct.App.) (discussing apportionment of the "increase in the value of separate property that is attributable to both community and separate property"), *cert. denied*, 110 N.M. 749, 799 P.2d 1121 (1990); *Dorbin*, 105 N.M. at 265–68, 731 P.2d at 961–64 (apportioning appreciation of the asset between separate and community interests).

In this case, the parties agreed that the value of the property was equal to the amount of separate funds spent in purchasing and renovating the property. Thus, by agreement of the parties, there was no increase in the value of the property that could be attributed to the community. Under these circumstances, the community has only a claim for reimbursement. Moreover, as to that claim for reimbursement, we think that the community labor devoted to the residence is analogous to the use of community funds to pay interest, taxes, and other expenses associated with maintaining an asset. The question is not whether significant funds or labor were expended on the separate property. Indeed, as the facts of *Dorbin* make clear, the amount paid for interest often greatly exceeds the amount of principal paydown. *Dorbin*, 105 N.M. at 267, 731 P.2d at 963. The question is whether the labor contributed to an increase in value.

Husband argues that this rule is unfair as a matter of policy. In support of his argument, he points out that:

[I]n many circumstances spouses may do things to the marital home that do not necessarily increase the value, but which make the home nicer or more liveable. For example, if community monies are used to build a closet into a separate asset, fundamental fairness to the community would seem to require reimbursement for that project even absent "en-

hanced value"; otherwise, there would be a windfall to the owner of the separate property.

However, as we have previously observed in *Dorbin*:

[H]usbands and wives have a mutual duty to support one another, including the use of separate funds where necessary or appropriate. It is sound policy to allow apportionment of an existing asset acquired with mixed monies (community and separate monies) and to deny reimbursement of monies spent, but not to acquire an asset. To do otherwise would be to invite litigation for accountings between spouses to determine who paid for the least significant thing.

*Dorbin*, 105 N.M. at 268, 731 P.2d at 964 (citing *See v. See*, 64 Cal.2d 778, 51 Cal. Rptr. 888, 415 P.2d 776 (1966)). We think that Husband's policy argument and his claim in this case illustrate precisely the problem that *Chance* and *Dorbin* sought to avoid.

For the reasons above given, we affirm the final decree insofar as it orders that the $5000 representing the loaned down payment on the Ojo Caliente house be divided equally between the parties. We reverse the final decree insofar as it imposes an equitable community lien on Wife's separate property residence in Cerrillos. Each party shall bear his or her own costs and attorney fees.

IT IS SO ORDERED.

MINZNER, C.J., and APODACA, J., concur.