892 P.2d 969

**Jacqueline Duran JURADO, Petitioner–Appellee/Cross–Appellant,**

v.

**Pedro D. JURADO, Jr., Respondent–Appellant/Cross–Appellee.**

**No. 15516.**

Court of Appeals of New Mexico.

Feb. 9, 1995.

524

and (5) whether the trial court erred in admitting Wife's exhibits 75 and 76 (two reports purporting to show the rates of return on capital investment properties).

In her cross-appeal, Wife raises the following issues: (1) whether the trial court's child support calculation violates standards and policies of the New Mexico Child Support Guidelines, and (2) whether Wife should be awarded interest from the date of the valuation of the community lien until payment.

Charlotte Greenfield, Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Las Cruces, for petitioner-appellee/cross-appellant.

Lloyd O. Bates, Jr., Bates Law Firm, Las Cruces, for respondent-appellant/cross-appellee.

## FACTS

The parties were married from 1980 to 1991. Shortly before the marriage, Husband became a 50% partner in Jurado Farms, his family's business. Jurado Farms is a diversified business consisting of farming property, agricultural processing property, and miscellaneous other real property, and it is Husband's sole and separate property. In 1980, Jurado Farms was valued at $965,714. At the time of the divorce in 1991, Jurado Farms was valued at $4,819,858. The trial court found, and the parties do not dispute, that Husband's share of the business at the time of dissolution was $2,409,929.

During the course of the marriage, Husband worked at Jurado Farms full-time. Wife worked at Jurado Farms as a bookkeeper intermittently and set up the bookkeeping computer system. Later in the marriage, Wife acted as the real estate agent for real estate in a subdivision owned by Jurado Farms.

The trial court found that both parties were undercompensated by Jurado Farms for their talents, work, and labor during the marriage. The trial court divided the appreciation in Jurado Farms equally between Husband and his brother. The amount of the original pre-marital equity, plus a rate of return of 10%, was deducted from the total value. One-half of Husband's remainder was awarded to Wife as her share of the community efforts. Although the trial court found that some of the properties' enhancement was due to natural appreciation, the judge did not make a precise determination as to what that would be; rather, natural appreciation was included in the rate of return figure.

*OPINION*

PICKARD, Judge.

This divorce case involves an appeal by Husband and a cross-appeal by Wife. Husband argues that Wife should not have been awarded a lien for a portion of the increased value of his separate property. Wife argues that she should have been awarded prejudgment interest on the community lien for the two years between the time the divorce was entered and the time the property issues were resolved and that the trial court's calculation of Husband's child support obligation was erroneous. We affirm on all issues regarding the trial court's award of a lien to Wife, and we reverse and remand on the calculation of child support.

## ISSUES

On appeal, Husband raises the following specific issues: (1) whether the trial court erred in awarding Wife a portion of the value of Husband's separate property; (2) whether the trial court failed to give Husband credit for the natural appreciation of his separate property; (3) whether the trial court selected an arbitrary rate of return; (4) whether there was no legal or evidentiary basis for the trial court's apportionment of the increase in the value of Husband's property;

## HUSBAND'S APPEAL

### Substantial Evidence

Issues 1, 2, 3, and 4 basically concern questions of substantial evidence. All of Husband's arguments may be distilled into the contention, frequently appearing in his brief, that Wife "presented no evidence ... regarding any amount of increase in the value of separate property resulting from undercompensated community labor." More specifically, Husband complains that "[n]o witness called by [Wife] and no exhibit introduced by [Wife] identified an amount of increase of value in [Husband's] separate property due to the uncompensated community efforts," and "[Wife] presented no testimony and no properly admitted exhibit described a fair rate of return for the nature of [Husband's] business."

■ It is well settled that in reviewing Husband's challenge, we view the evidence in the light most favorable to the findings and judgment entered below. *Smith v. Smith,* 114 N.M. 276, 280, 837 P.2d 869, 873 (Ct.App. 1992). If substantial evidence exists, then the conclusion of law must be upheld absent an abuse of discretion. *Id.* This Court indulges in all reasonable inferences that can be drawn from the evidence in support of the judgment. *Zemke v. Zemke,* 116 N.M. 114, 118, 860 P.2d 756, 760 (Ct.App.), *cert. denied,* 116 N.M. 71, 860 P.2d 201 (1993).

■ On appeal, it was Husband's duty to set forth the evidence in the light most favorable to support the findings, and then demonstrate why the evidence failed to support the findings made by the trial court. *See State ex rel. Martinez v. Lewis,* 116 N.M. 194, 206, 861 P.2d 235, 247 (Ct.App.), *cert. denied,* 115 N.M. 709, 858 P.2d 85 (1993); SCRA 1986, 12–213(A)(3) (Repl.1992). However, Husband's briefs generally summarize the evidence most favorable to himself and omit many of the following important facts, together with the inferences that may be properly drawn therefrom. Husband claimed he was paid only $1,000 a month, but Jurado Farms paid his house payment, health insurance, car payment and repairs, utilities, gasoline, taxes, child support, and attorney fees. According to Wife's expert, the undercompensation of the parties contributed to Jurado Farms' growth; the work and skill levels of the parties contributed to the growth of the business; and the fair market value of Jurado Farms was enhanced exponentially by not paying competitive wages and by purchasing additional properties. Wife's expert also testified that Jurado Farms was profitable enough to pay off hundreds of thousands of dollars in debts "in one single swipe, so I figured that if they are able to do that, they could also be paying comparable compensation and maybe slow down their acquisition binge."

■ The community is entitled to a lien against the separate property of a spouse for the enhanced value of such property attributable to community labor during the marriage. *Portillo v. Shappie,* 97 N.M. 59, 60–64, 636 P.2d 878, 879–83 (1981); *Martinez v. Block,* 115 N.M. 762, 764, 858 P.2d 429, 431 (Ct.App.1993); *Smith,* 114 N.M. at 280, 837 P.2d at 873. The labor of the parties belongs to the community rather than to the individuals, but community labor, by itself, does not give rise to a community interest. *Martinez,* 115 N.M. at 764, 858 P.2d at 431. Rather, it is the increase in the value of the asset that is apportioned among separate and community interests. *Id.*

■ Once a property's separate character is established, it maintains that character until it is shown to be community property by direct and positive evidence. *Zemke,* 116 N.M. at 119, 860 P.2d at 761; *Bayer v. Bayer,* 110 N.M. 782, 786, 800 P.2d 216, 220 (Ct.App.), *cert. denied,* 110 N.M. 749, 799 P.2d 1121 (1990). Any increase in the value of separate property is presumed to be separate unless it is rebutted by direct and positive evidence that the increase was due to community funds or labor. *Id.*

The real question in this case is "What constitutes direct and positive evidence?" Husband appears to argue that there must be precision and a clearly defined, objective figure presented. He relies primarily on *Bayer* and its discussion of direct and positive proof. *See id.,* 110 N.M. at 785–86, 800 P.2d at 219–20. Wife points to *Portillo,* contending that mathematical exactness is nei-

ther expected nor required, and that the goal should be substantial justice upon the particular facts of each case. *See Portillo,* 97 N.M. at 62, 636 P.2d at 881. Wife further argues that the trial court correctly applied the method for valuation expressed in *Dorbin v. Dorbin,* 105 N.M. 263, 268, 731 P.2d 959, 964 (Ct.App.1986).

In *Dorbin,* the Court articulated the following four-step formula:

1) The value of the separate asset or the separate portion of an asset at the date of marriage is determined.

2) That pre-marriage value is treated as though it had been a well-secured, long-term investment and such interest as a well-secured, long-term investment would have earned is added to the separate pre-marriage value. The total is the separate property interest.

3) The fair market value of the asset is determined as of the date of divorce.

4) The fair market value of the asset as of the date of divorce is apportioned with the separate property owner taking an interest equal to the value found at step 2 while the community receives the balance of the fair market value.

*Id.* at 268, 731 P.2d at 964. This method gives the separate property owner a " 'fair return on his investment.' " *Id.* In addition to the property's value at the time of the marriage and at the time of divorce, the formula requires proof of what constitutes a " 'fair return.' " *Id.*

In this case, both parties presented evidence of the value of Jurado Farms at the time of the marriage. The trial court determined Husband's valuation was proper. This finding is not disputed on appeal. An unchallenged finding of the trial court is binding on appeal. *Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). Similarly, the trial court chose Husband's valuation of Jurado Farms at the time of divorce. *See Cox v. Cox,* 108 N.M. 598, 603, 775 P.2d 1315, 1320 (Ct.App.) (parties cannot complain of findings they request), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (1989); *Mitchell v. Mitchell,* 104 N.M. 205, 217, 719 P.2d 432, 444 (Ct.App.) (conflicting evidence between experts must be resolved by the trial court), *cert. denied,* 104 N.M. 84, 717 P.2d 60 (1986).

The trial court found that a fair rate of return on Husband's separate property investment was 10%, and that this rate included natural appreciation of the property as well as income. More to the point, Husband himself used 10% as the rate of return in his supplemental findings of fact. Wife presented evidence, both documentary and expert oral testimony, of various interest rates actually paid on certain of Jurado Farms' assets, as well as prime rates and commercial rates being paid during the time period of the marriage. Ultimately, the trial court was presented with a range of 2% to 15% as a rate of return. The court was then entitled to choose a figure within that range, such figure being supported both by Husband's requested finding and by substantial evidence. *See Cox,* 108 N.M. at 603, 775 P.2d at 1320; *Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 476, 697 P.2d 156, 159 (Ct.App. 1985) (general substantial evidence principles); *cf. El Paso Elec. Co. v. Landers,* 82 N.M. 265, 266, 479 P.2d 769, 770 (1970) (when there is evidence of a high value and a low value, an amount awarded in between is supported by substantial evidence).

Husband argues that some of the evidence discussed in Wife's brief was improper, i.e., Wife's tendered opinion that 90% of Jurado Farms' growth was due to community efforts, but even assuming, arguendo, that such evidence should not be considered, and the trial judge specifically stated he would not consider it, there is still abundant proper evidence to support the court's conclusions. *See In Matter of I.N.M.,* 105 N.M. 664, 669, 735 P.2d 1170, 1175 (Ct.App.1987) (trial court is presumed to have disregarded incompetent evidence, absent a showing that the court was influenced thereby). In addition, evidence was presented that Husband was a very good manager of the business, and that both he and Wife were undercompensated for their labor at Jurado Farms in an amount over $500,000 over the eleven year period they were married.

Relying on *Bayer,* Husband argues that no evidence was presented to show pre-

cisely what amount of the property's enhanced value could be attributed to community efforts. *See Bayer,* 110 N.M. at 785, 800 P.2d at 219 (absent findings as to the amount by which the community labor enhanced the value of the property, there can be no apportionment). However, contrary to Husband's contention, his complaint is eliminated by the trial court's application of the *Dorbin* formula. *See Laughlin v. Laughlin,* 49 N.M. 20, 34, 155 P.2d 1010, 1019 (1944) (profits remain separate property only if incurred without any direct labor or active use of the property by spouse owning separate property). *Bayer* is distinguishable from this case. There the trial court found that methods of apportionment previously approved by cases such as *Dorbin* were not appropriate to use. *Bayer,* 110 N.M. at 784, 800 P.2d at 218. When previously approved methods were not appropriate and when there was no evidence to support the method used, we had no choice in that case but to reverse on the basis of insufficient evidence. *Id.* at 788–89, 800 P.2d at 222–23.

This case, however, is different. There was evidence and an unchallenged finding that Jurado Farms undercompensated the parties. There was evidence that the undercompensation led to an increase in value for Jurado Farms. There was evidence on each of the factors set forth in the *Dorbin* formula. The trial court could therefore infer that the undercompensation of the parties caused the increased value of Jurado Farms in the amount found by the trial court according to the *Dorbin* formula. Otherwise, to deny Wife any of the enhanced value of Jurado Farms, in spite of eleven documented years of undercompensated community labor, is to condemn her to "a life of practical serfdom with no hope of accumulating any property she could call her own, or legally claim an interest therein." *Laughlin,* 49 N.M. at 33, 155 P.2d at 1018.

█ Husband argues that the *Dorbin* formula, or any method of apportionment, can only be applied when an asset is acquired during marriage using both separate and community funds. This is simply an erroneous statement of the law. Apportionment is also proper when premarital separate property is enhanced through definable community efforts. *See Laughlin,* 49 N.M. at 32–33, 155 P.2d at 1018; *Martinez,* 115 N.M. at 764, 858 P.2d at 431.

Husband also contends that the trial court did not give him credit for the natural appreciation of his property. He points to Finding 28, the equity value of Jurado Farms at the time of divorce, as referring to the whole value of the property without deducting natural appreciation, as testified to by his expert. However, Finding 26 states that the amount deducted for natural appreciation is included in the rate of return sum. Husband argues that the court should not have included the value of natural appreciation in the rate of return figure, but cites no authority in support. *See In re Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues not supported by cited authority will not be reviewed).

█ Although Husband's expert testified regarding natural appreciation, the trial court was not bound by that figure. *See Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 153, 703 P.2d 925, 930 (Ct.App.1985) (fact finder may disregard expert opinions, even when those opinions are uncontradicted). Of Husband's total share of Jurado Farms, $2,409,929, the court concluded, pursuant to the *Dorbin* formula, that $1,389,532 was Husband's sole and separate property. The remaining $1,020,397 was allocated to the community as a lien on Husband's separate property, with Wife receiving a lien for half of that figure—$510,198. All things considered, Wife's lien is eminently fair, supported by the evidence presented or by Husband's own requested findings, and supported by the law. Therefore, the trial court is affirmed on this issue.

### Trial Exhibits

█ Husband's final issue is that the trial court erred in admitting Wife's exhibits 75 and 76 over his objections. These were demonstrative exhibits, created by Wife to illustrate the mathematical calculations of certain rates of return on two properties. Wife's counsel had apparently intended to use them during closing argument, but the court declined to hear final arguments. Husband objected mainly because he objected to the

rate of return used. However, there was evidence of various rates of return in effect during the years at issue. Thus, Husband's reliance on *State ex rel. Human Serv. Dep't v. Coleman,* 104 N.M. 500, 506, 723 P.2d 971, 977 (Ct.App.1986), for the proposition that written reports are inadmissible absent a proper foundation, is unavailing. The exhibits here were demonstrative trial exhibits, as are typically used by trial counsel, based upon Wife's theory of the evidence.

Moreover, regardless of whether the challenged exhibits were properly admitted, they make no difference to the outcome of any issue presented inasmuch as they do not appear to have been relied on by the trial court. *See In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.) (error will not be corrected if it will not change the result), *cert. denied,* 113 N.M. 690, 831 P.2d 989 (1992); *In Matter of I.N.M.,* 105 N.M. at 669, 735 P.2d at 1175 (trial court is presumed to have disregarded incompetent evidence, absent a showing that the court was influenced thereby). Therefore, Husband's argument is without merit.

### Attorney Fees

Wife requests attorney fees and damages for a frivolous appeal. *See* SCRA 1986, 12–403(B)(4) (Repl.1992 & Cum.Supp.1994). We deny the request because we do not find the appeal frivolous. However, because we are reversing the child support award and remanding to the trial court, we instruct the trial court to award a suitable sum in attorney fees for defending against Husband's appeal, for prevailing on a part of her own appeal, and for whatever work is done in the trial court on the child support issue.

### WIFE'S CROSS–APPEAL

#### Child Support

Wife contends that the trial court erred in fixing Husband's child support obligation based on the amount he drew from Jurado Farms plus an amount of non-cash benefits. The trial court, without elaboration, found that Husband's gross income as shown on his tax returns included his share of the gross income from the partnership without regard to the amount of income actually received by him. Thus, the trial court found that good cause was shown for deviating from the New Mexico Child Support Guidelines. Instead, child support was to be calculated using the amount of Husband's draws, less any amounts paid in federal and state taxes based on the partnership earnings, plus $7,800 to account for non-cash fringe benefits. This amount is then to be adjusted under current income tax schedules to determine the amount of pre-tax income necessary to produce the take-home pay. The pre-tax income is used as the figure to calculate child support.

Wife's chief complaint with this formula is that there is a good deal of room for Husband to manipulate his income for child support purposes. For example, in 1991, Husband's taxable income was $281,946, but his draws amounted to only $90,671. In 1992, his taxable income was $709,153, but he testified that he took draws of only $1,000 monthly. Additionally, Husband's attorney fees, house payment, and other personal expenses are paid by Jurado Farms. Although Husband asserts that he is paid only $1,000 per month, it appears that all draws, including those that pay expenses, would be included under the trial court's formula. Thus, under the formula, a pre-tax hypothetical earning for Husband would be approximately $59,500 for 1992 according to Husband's expert. Annually, child support under this theory would amount to $11,508 versus $109,919 when calculated on Husband's actual gross income.

There was much testimony to the effect that the partners of Jurado Farms reinvested a goodly portion of their earnings in the business, thereby acquiring new properties and equipment, paying off debt, and so on. It appears that the trial court adopted this formula in order to allow Husband to continue to reinvest his profits. However, no findings were made by the trial court, nor was any evidence pointed to by Husband, of how much money was needed to keep Jurado Farms going. *Cf. Roberts v. Wright,* 117 N.M. 294, 297–98, 871 P.2d 390, 393–94 (Ct. App.1994). Pursuant to NMSA 1978, Section 40–4–11.2 (Repl.Pamp.1994), deviation from the Child Support Guidelines must "be sup-

ported by a written finding in the decree ... that application of the guidelines would be unjust or inappropriate."

■ We agree with the trial court that including the gross income attributable to Jurado Farms would be unjust if some of the income needed to be reinvested to sustain the business. The *Roberts* case presented similar facts. There, the trial court did not include Mother's corporate earnings, over the amount she actually received in payment, in calculating child support. However, there are two distinctions between that case and this one. First, the parties in that case stipulated that Mother's pay was adequate whereas in this case the trial court found that Husband was undercompensated. Second, the trial court in that case found that the remainder of the corporation's profits were necessary to the continuation of the business (required purchase of inventory) and that the reinvestment was based on sound business sense, and such findings were based on substantial evidence. *Id.* at 297, 871 P.2d at 393. This Court agreed, holding that the reinvestment constituted an ordinary and necessary business expense. *Id.*

■ "The parent claiming a business expense must show not only that it is ordinary and necessary to the business, but also that it is irrelevant to calculating support obligations." *Id.* at 297, 871 P.2d at 393. Here, no evidence was offered by Husband showing how much of Jurado Farms' income is required to be reinvested as an ordinary and necessary expense. *See* NMSA 1978, § 40–4–11.1(C)(2)(b) (Repl.Pamp.1994); § 40–4–11.2.

Husband makes a number of arguments—mainly that the trial court has discretion in awarding child support, and that the trial court's decision here is supported by substantial evidence. However, he does not distinguish *Roberts*, and with respect to that holding, no positive or substantial evidence was presented as to the amounts needed by Jurado Farms for reinvestment purposes. Nor was there sufficient evidence from which the trial court could infer what those amounts might be.

The *Roberts* opinion was filed in February 1994. Although the final decree in this case was filed in March 1994, the trial took place in October 1993, and it would be fair to say that the parties did not have the *Roberts* opinion to rely upon when presenting their evidence. Wife, however, preserved this issue by requesting findings to the effect that Jurado Farms did not need additional investment from the partners and Husband could control the amount of withdrawals and income he receives. It may be that Husband must reinvest some of Jurado Farms' profit in order to continue with the business and make it thrive, although we note that Wife presented evidence that Jurado Farms had reached a level where no great reinvestment was needed.

■ Wife contends that deviation from the guidelines for "maintenance" of a business is allowed, but money for "growth" is still income for child support purposes. Under the statutes and case law, Wife is correct, but there still remains the question of what is necessary for reinvestment. In fairness, Husband should be allowed to show what is necessary for his business. *See Portillo.* In light of the foregoing, we reverse and remand for further proceedings pursuant to *Roberts.*

### Interest on Community Lien

Wife's second issue is that the trial court erred in failing to award interest on her share of the community lien from the date of valuation, thereby causing an unequal division of property. The parties were divorced in January 1992. The trial court ultimately found that Wife's share of the community lien on Jurado Farms amounted to $510,198. The trial court further ordered that this amount be paid to Wife in ten equal annual installments, commencing on March 1, 1994. The judgment states, "The unpaid balance of principal shall bear interest at the rate of Ten Percent (10%) per annum, commencing January 1, 1994. Interest accruing prior to March 1 of each year shall be paid, in addition to principal, on each March 1, commencing March 1, 1994." Thus, Wife received approximately two months of post-divorce

pre-judgment interest in addition to the regular post-judgment installment interest.

Husband argues that the award of interest rests within the sound discretion of the trial judge. He points out that the 10% interest rate is high considering the prime interest rate in effect at the time of the divorce, and that this was the judge's way of making up whatever might have been lost in the past. He also notes that the high rate, combined with the judge's award of interest for two months prior to the entry of the decree, indicates that the trial court considered the intervening time between the divorce and the decree in making his ruling.

 Our statutes and cases interpreting them have allowed prejudgment interest in two situations. The first type of situation is that covered by NMSA 1978, Section 56–8–3 (Repl.1986), pursuant to which the award is a matter of right if the amount in question is fixed and the award is a matter of the court's discretion if the amount in question is ascertainable. *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 488, 709 P.2d 649, 657 (1985). The second type of situation is that covered by NMSA 1978, Section 56–8–4(B) (Repl.1986 & Cum.Supp. 1994), pursuant to which the award is discretionary and designed to encourage settlement in all types of cases. *See Lucero v. Aladdin Beauty Colleges, Inc.*, 117 N.M. 269, 272, 871 P.2d 365, 368 (1994); *Southard v. Fox*, 113 N.M. 774, 776, 833 P.2d 251, 253 (Ct.App.1992). While other jurisdictions have determined that general statutes do not apply to divorce cases, they have also determined that divorce courts do have discretion to award prejudgment interest in appropriate circumstances. *See* Danny R. Veilleux, Annotation, *Prejudgment Interest Awards in Divorce Cases*, 62 A.L.R.4th 156, §§ 3, 4 (1988). We follow these authorities and hold that the award of prejudgment interest in a divorce case is a question within the sound discretion of the trial court, as it is in other cases under *Lucero, Southard,* and *United Nuclear.*

 Wife argues that failing to award her interest from the date of valuation—December 31, 1991—deprived her of her fair share of the marital estate. However, since the award and the amount of interest is discretionary, i.e., it could have been the 8¾% proposed by Wife in her supplemental findings, Wife's argument fails. For the reasons argued by Husband, we hold that the trial court made a reasonable determination about what Wife should receive, and therefore there was no abuse of discretion. *See* Veilleux, *supra*, § 7; *De La Rama v. De La Rama*, 241 U.S. 154, 159, 36 S.Ct. 518, 519, 60 L.Ed. 932 (1916) (it was within the lower court's discretion to grant interest on a property judgment from the time of divorce to the final grant of the property award); *see also Olivas v. Olivas*, 108 N.M. 814, 821, 780 P.2d 640, 647 (Ct.App.1989) (mathematical exactness is not required in property division). Therefore, the trial court is affirmed on this issue.

## CONCLUSION

The lien on Husband's separate property, together with the trial court's order on the manner of paying it, is affirmed. The award of child support is reversed. This case is remanded for further proceedings on the issue of child support and for the trial court to make an appropriate award of attorney fees.

IT IS SO ORDERED.

ALARID and BOSSON, JJ., concur.