1998-NMCA-080

961 P.2d 168

**Jane Layton TREGO, Petitioner–Appellee,**

v.

**Philip B. SCOTT, Respondent–Appellant.**

**No. 17397.**

Court of Appeals of New Mexico.

April 28, 1998.

Certiorari Denied June 15, 1998.

Mary W. Rosner, Beverly J. Singleman, Hubert & Hernandez, P.A., Las Cruces, for Petitioner–Appellee.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Respondent–Appellant.

## OPINION

ALARID, Judge.

{1}   Trego (Wife) and Scott (Husband) were married on September 14, 1987, and divorced on September 9, 1994.  The issues between the parties concern solely the division of property.  The trial court ruled that all of the parties' property was community property.  The trial court apportioned the property under *Dorbin v. Dorbin,* 105 N.M. 263, 268, 731 P.2d 959, 964 (Ct.App.1986).  It calculated Wife's share of the community property interest by one of the methods in *Dorbin,* and awarded her $726,200.00, a number of properties which Husband believes to be his separate property, attorney fees, expert fees, and prejudgment interest.  Husband challenges the trial court's ruling on several grounds: (1) whether all the property was community;  (2) whether the community had any interest in his separate property;  (3) whether substantial evidence supports a finding that community funds contributed to the increased value of the separate property;  (4) whether the trial court correctly calculated

the community's apportioned share in the increased value of the separate property; (5) whether the trial court had jurisdiction to order Husband to transfer specific items of his separate property to Wife as part of a judgment dividing community property; and (6) whether prejudgment interest was properly awarded. We affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

{2} At the time of the marriage, Husband had separate property worth $10,441,-638.00. Wife had separate property worth $910,479.00. Wife's profession has always been that of a homemaker. Husband has two businesses, an anesthesiology practice as a medical doctor and Scott Properties, a sole proprietorship through which Husband makes investments in real property and in various partnerships.

{3} Wife spent virtually all her annual income, derived from property and entitlements she had at the date of marriage, on support and maintenance of the community. Husband did not spend all of the community income from his anesthesiology practice to support the community. During the marriage Husband bought and sold a number of investments. Scott Properties not only used all the revenue from the properties during the marriage, it experienced a negative cash flow of more than $900,000.00. Husband did not liquidate any properties for the purpose of covering any of these negative cash flow losses. The cash flow losses were supported by community funds. Wife contributed community labor to Scott Properties during the marriage. Wife signed marital relinquishment agreements for properties acquired by Husband during the marriage but the trial court ruled these were void due to undue influence, coercion, and lack of consideration. At the end of the marriage the trial court found that Husband's property was worth $16,747,067.00, and that Wife's was worth $1,266,675.00. The trial court ruled that all property held by the parties at the end of the marriage was community property.

**DISCUSSION**

**I. Whether All Property Was Community**

{4} The trial court's findings and conclusions are inescapably inconsistent. It ruled that all property was community. Yet it treated the parties' property not as though it was community property, but as though it was all separate property that had been enhanced in value through the use of community funds or labor, and apportioned to the community its share of the enhanced value. *See generally Dorbin,* 105 N.M. 263, 731 P.2d 959. The judgment awarded Wife her share of this enhanced value apportioned to the community.

{5} Wife conceded, by her chosen method of calculating the monies due her, that the properties in dispute remained separate. The judgment was based on Wife's own computations, which assumed that the properties remained separate but that the community had acquired an apportioned interest in their increased value. Apportionment is appropriate when separate property is enhanced through community efforts or when an asset is acquired with both separate and community funds. *See Jurado v. Jurado,* 119 N.M. 522, 528, 892 P.2d 969, 975 (Ct.App.1995). The method proposed by Wife and used by the trial court is necessarily based on the beginning proposition that the property is separate. *See Dorbin,* 105 N.M. at 268, 731 P.2d at 964.

{6} We therefore hold the trial court's conclusions, that all property was transmuted into community property, are of no effect because they were not carried forward into the judgment. *See Watson v. Blakely,* 106 N.M. 687, 691, 748 P.2d 984, 988 (Ct.App.1987) ("Findings and conclusions which are not carried forward and incorporated in the judgment generally have no effect."), *overruled on other grounds by Kelly Inn No. 102, Inc., v. Kapnison,* 113 N.M. 231, 239, 824 P.2d 1033, 1041 (1992).

**II. Substantial Evidence**

{7} Husband challenges the trial court's division of property only as it relates to his properties for which the trial court found a positive apportionment value, i.e., those properties for which the trial court found the community should have a share of the in-

creased value. He does not challenge the valuation of those properties which had a negative value, nor does he challenge the apportionment of Wife's property. Wife attacks Husband's appeal of the valuation of only a portion of the properties as "misleading" but does not explain why. Since neither party appeals the trial court's treatment of the remaining properties, we will focus on the properties identified by Husband.

{8} The trial court found each of the subject properties increased in value during the marriage. "Any increase in the value of separate property is presumed to be separate unless it is rebutted by direct and positive evidence that the increase was due to community funds or labor." *Jurado,* 119 N.M. at 526, 892 P.2d at 973. Husband argues that there was neither a finding nor substantial evidence that community funds increased the value of these properties. We agree. Our cases are adamant that the community does not acquire an interest in separate property simply by paying interest, taxes, and other expenses of the separate property, even though those expenses may far exceed principal payments on the property. *See, e.g., Martinez v. Block,* 115 N.M. 762, 765, 858 P.2d 429, 432 (Ct.App.1993). Once the properties are deemed to be separate (and neither party knew during trial whether the properties would be deemed to be community or separate), it becomes Wife's burden to show that community funds increased the value of Husband's separate property. It was imperative that Wife prove that expenditures that increased the value of the property (such as principal payments, remodeling, etc.) came from community funds. Wife did not satisfy that burden, except to the extent conceded by Husband. It is not enough for Wife to argue that since the community paid certain expenses of the property, such as mortgage interest, Husband was able to make the principal payments with separate funds. If we adopt that argument, we would undermine totally the proposition set forth in *Martinez* and other cases. Every time the community made payments on interest or taxes, the community could argue that it has an interest in the separate property, because payment of those expenses enabled the other spouse to pay for the principal with his or her separate property. *See id.* We believe that this road is foreclosed by our precedents. We note that Wife has not raised a claim that the community is entitled to reimbursement for the sums expended to pay such expenses for the separate property.

{9} The trial court also failed to find that community labor contributed to the separate properties' increase in value. While there appears to have been evidence of substantial effort by Husband with respect to the property, the trial court made no finding that his efforts increased the value of his separate property, in spite of the fact that Wife requested such a finding. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (failure of a trial court to make a finding of fact is regarded as a finding against the party seeking to establish that fact).

{10} Nor did the trial court find that Wife's efforts increased the value of Husband's separate property. It found that Wife contributed her labor to Husband's property business in a number of ways, such as picking up checks and cleaning the property. We do not see how any of those efforts increased the value of any property, and the trial court did not so find.

{11} Husband concedes that community funds were used to make the monthly principal payments on certain properties, and that the community has an apportionable interest in the initial marital residence at 421 Los Gatos, Los Gatos, California; the successor marital residence at 177 Alice, Campbell, California; the rental property at 2035 Monaco, San Jose, California; and the vacation home at No. 4 Makaha, Sunriver, Oregon. The trial court found the community property interest in the various properties to be as follows:

| | |
|---|---|
| 421 Los Gatos | $464,724 |
| 177 Alice | 43,269 |
| 2035 Monaco | (3,184) |
| No. 4 Makaha | 300,136 |

Husband does not challenge the amount apportioned to 2035 Monaco but does challenge that apportioned to the other properties.

{12} We reverse the trial court's determination that the community had an apportionable interest in Husband's separate properties as not supported by substantial evidence, except that we affirm the finding of a community interest in 421 Los Gatos, 177 Alice, 2035 Monaco, and No. 4 Makaha. We remand to the trial court for calculation of that interest.

## III. The Community's Interest in the Value of the Separate Property

{13} Apportionment is appropriate whenever community labor or community funds have enhanced the value of separate property. *See Jurado,* 119 N.M. at 528, 892 P.2d at 975. The separate estate is entitled to a fair return on the value of the property at date of marriage due to normal appreciation. *See Dorbin,* 105 N.M. at 268, 731 P.2d at 964. The trial court must apportion the value enhanced by community funds between the separate and community estates. *See id.* at 266, 731 P.2d at 962. No one method of apportionment is favored above all others; the trial court may use whatever method will achieve substantial justice, and is supported by substantial evidence in the record. *See id.* at 267, 731 P.2d at 963.

{14} The trial court used the formula which is set out in *Dorbin,* 105 N.M. at 268, 731 P.2d at 964. We will refer to this formula as the *"Dorbin* formula 2," as it is the second method of apportionment explained in the *Dorbin* case (Husband is correct in observing that *Dorbin* did not actually apply the *Dorbin* formula 2). The *Dorbin* Court ruled there was no evidence presented in that case to warrant the formula's application. *Id.* Here the trial court determined, for all of the challenged properties, that there was both evidence of increase in value during the marriage and of an appropriate rate of return, and thus the formula could be properly applied. This formula has four steps:

1) The value of the separate asset or the separate portion of an asset at the date of marriage is determined.

2) That pre-marriage value is treated as though it had been a well-secured, long-term investment and such interest as a well-secured, long-term investment would

have earned is added to the separate pre-marriage value. The total is the separate property interest.

3) The fair market value of the asset is determined as of the date of divorce.

4) The fair market value of the asset as of the date of divorce is apportioned with the separate property owner taking an interest equal to the value found at step 2 while the community receives the balance of the fair market value.

*Id.*

{15} Husband argues that the trial court did not apply this formula correctly. Wife responds that husband's contentions amount to a "my expert was better than your expert" claim. To the extent Wife is arguing that this Court may not critically review the calculations of the experts that have been preserved in the record for errors of law, we disagree. On remand, it is for the trial court to assure the evidentiary basis necessary before it applies *Dorbin* formula 2 or an alternative formula. Also, Husband contends the natural appreciation of the separate property should be based on the Fair Market Value (FMV) at time of marriage, not the original purchase price. We agree. The trial court erred in this respect. The trial court did not err in using the purchase price to calculate a rate of return on the Alice property because that property was acquired after the parties were married.

{16} *Dorbin* does not state how the community's interest in the increased value of a separate asset should be calculated when the asset is alienated during marriage and another bought in its place, or even if the calculation should be made at all on alienated property. *See id.* at 268, 731 P.2d at 965. This Court has recognized in dicta, however, that a calculation may be made with each alienation. *See White v. White,* 105 N.M. 600, 606, 734 P.2d 1283, 1289 (Ct.App.1987) (holding that home was community property where predecessor residence was initially purchased with separate funds but proceeds from sale of predecessor residence were commingled with community property upon sale and applied to succeeding residences; noting "there was no evidence of how value should

have been apportioned between community and separate property each time the parties sold a residence during the period of the marriage") (citing *Dorbin*, 105 N.M. at 263, 731 P.2d at 959). We now extend *White*.

{17} The trial court considered FMV rather than equity. Husband urges us that the formula should be based on equity, not on FMV. We decline to so hold. We think a court may use a rate of return on the FMV or on the equity, in its discretion, but it is important to recognize that the two rates would be different and to consider the appropriate data to determine what the applicable percentage should be. Here, the parties agreed that the natural return on an investment would be the prime rate.

{18} The trial court did not err in allowing Wife's CPA to testify as to real estate values, and substantial evidence supported the findings on the value of the real estate. Husband asserts, without providing any references to the transcript, that Wife's CPA should not have been allowed to testify as to real estate values. We review the trial court's decision to allow a witness to testify as an expert for abuse of discretion. *See Shamalon Bird Farm, Ltd., v. United States Fidelity & Guar. Co.*, 111 N.M. 713, 714, 809 P.2d 627, 628 (1991). The trial court did not abuse its discretion in allowing Wife's CPA, Randy Travis, to testify as to the value of Husband's holdings. Travis testified as to the method he used to evaluate the value of Husband's property. The fact that Husband's witnesses disputed Travis's method and conclusions does not mean that the court erred in qualifying Travis as an expert.

{19} Alternatively, Husband contends that the expert's testimony did not provide substantial evidence to support the court's findings regarding the value of the real estate. Husband states that Wife's expert lacked substantial evidence to support his opinions on the value of the real estate but does not detail the evidence supporting and refuting the values found by the court, although we note that Husband agreed with Wife's CPA on the value of many of the properties. Husband has waived a substantial evidence challenge. *See Martinez v.*

*Southwest Landfills, Inc.*, 115 N.M. 181, 184–86, 848 P.2d 1108, 1111–13 (Ct.App.1993) (appellant challenging the sufficiency of the evidence must lay out for this Court all the evidence relevant to the issue, including that supporting the judgment, or else he waives a substantial evidence challenge).

## IV. Jurisdiction

{20} In dividing the community's share of the enhanced value of the separate assets, the Court awarded Wife several of Husband's separate properties located in New Mexico. Husband relies on NMSA 1978, Section 40–4–7 (1993) for the proposition that the trial court did not have jurisdiction over Husband's separate property so as to have the power to order Husband to transfer these properties to Wife.

{21} Husband's reading of the statutes is at once too broad and too narrow. His reading of Section 40–4–7 is too broad, as that statute concerns how the trial court may divide property to provide spousal support and child support. It has no application to this case. Husband's reading of the statutes is too narrow, in that he ignores NMSA 1978, Section 40–4–4 (1973), which without restriction or reservation gives to the trial court, in proceedings for the dissolution of marriage, "jurisdiction of *all* property of the parties, wherever located or situated in the state." (Emphasis added.) We think the trial court clearly had jurisdiction over all separate and community property located in New Mexico.

{22} The trial court is to divide community property equally. *See Ruggles v. Ruggles*, 116 N.M. 52, 58, 860 P.2d 182, 188 (1993) (" 'property attributable to community earnings must be divided equally *when the community is dissolved*' ") (quoting *Copeland v. Copeland*, 91 N.M. 409, 411, 575 P.2d 99, 101 (1978)) (emphasis added by *Ruggles* court). It has broad discretion in doing so. *See Cunningham v. Cunningham*, 96 N.M. 529, 531, 632 P.2d 1167, 1169 (1981) (trial court did not abuse its discretion in awarding community ranch to wife while ordering wife to pay $100,000 to Husband). Here, part of the otherwise separate property belonged to the community: the community's share of

the increased value. Husband contends that the trial court at most should have awarded a money judgment, with a lien on Husband's separate property to secure its payment. But there are a variety of reasons why the trial court may have found that alternative less attractive, including "the important goal of minimizing future contact and conflict between divorcing spouses." *Ruggles v. Ruggles*, 116 N.M. at 62, 860 P.2d at 192. We cannot say that the trial court abused its discretion in simply awarding title to some of the properties to Wife as her share of the community property.

### V. Prejudgment Interest

{23} Husband protests that prejudgment interest is not allowed under NMSA 1978, Section 56–8–4 (1993), to the extent that the judgment vests title in real property, because the statute refers to interest on judgment for the payment of money. Subsection A of the statute refers to judgments for the payment of money in relation to post-judgment interest. Subsection B, which relates to prejudgment interest, is not so limited. By its terms, Subsection B allows prejudgment interest after considering:

(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

(2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Section 56–8–4(B)

{24} Other jurisdictions have held that general statutes such as this one do not apply in divorce cases. *See Jurado*, 119 N.M. at 531, 892 P.2d at 978 (discussing Danny R. Veilleux, Annotation, *Prejudgment Interest Awards in Divorce Cases*, 62 A.L.R.4th 156, §§ 3, 4 (1988)). We need not decide whether our statute applies in divorce cases, as we have already held that "the award of prejudgment interest in a divorce case is a question within the sound discretion of the trial court." *Id.* The trial court specifically found that Husband had delayed the proceedings on the grounds he was going to call numerous witnesses whom he did not in fact call. Additionally, Wife had made offers of settlement to Husband, which he rejected. Under these circumstances the trial court was well within its discretion in awarding

prejudgment interest to Wife. On remand, however, the trial court will have to recompute the amount of prejudgment interest. The trial court must take care that it is not providing Wife with double recovery in this regard. The award of prejudgment interest was computed on the basis of Wife's share of the apportionment interest found by the trial court. The trial court ordered Husband to pay part of that sum in money and part by transferring his separate property. If the trial court again orders Husband to pay part of a judgment against him by transferring one or more parcels of his separate property to Wife, to the extent that the transferred separate property appreciated in value between the time that its value was set and the date of the judgment, that appreciation must be taken into account in the award of prejudgment interest.

### CONCLUSION

{25} We hold that the trial court's findings and conclusions, that all property held at the end of marriage was community, are of no effect because they were not carried forward into the judgment. We reverse the trial court's conclusion that the community had an apportionable interest in Husband's separate property, except as conceded by Husband. We reverse the trial court's calculation of the community's interest and remand for distribution of the community's interest in conformance with our opinion. We affirm the trial court's jurisdiction to award specific items of Husband's separate property to Wife as part of a judgment dividing community property, although on remand the trial court will need to reconsider whether to make such an award and, if so, which properties to award. Finally, we affirm the trial court's award of prejudgment interest to Wife. Husband's request for oral argument is denied. We leave it to the trial court to decide on remand whether Wife's request for attorney fees on appeal should be granted, and if so, in what amount.

{26} **IT IS SO ORDERED**.

HARTZ, C.J., and FLORES, J., concur.