This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**OTIS B. FERGUSON, JR.,**

    Petitioner-Appellant,

v.                                           **NO. 29,550**

**TRUDY A. FERGUSON,**

    Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

The Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Keithly & English, P.C.
Shane A. English
Anthony, NM

for Appellee

## MEMORANDUM OPINION

**WECHSLER, Judge.**

    In a 1980 marital settlement agreement (MSA), Otis Ferguson, Jr. (Husband)

agreed to pay Trudy Ferguson (Wife) 10% of his military retirement benefits when he retired. [RP 16] Husband retired in 1998 and did not pay Wife as promised. [RP 53-54] Approximately nine years after Husband retired, Wife found out and moved to enforce the judgment. [RP 23-24] After taking evidence and finding facts, the court found for Wife. [RP 52-56, 123-24] The court enforced the MSA and ordered Husband to pay Wife 10% of each retirement payment he had received since retiring. [RP 55, ¶ 1, 123-24] In addition, the court awarded Wife prejudgment interest of $22,004.45. [RP 103] Husband appeals, claiming that there were several procedural irregularities and that the court erred in interpreting the MSA and in awarding prejudgment interest. Our notice proposed to affirm. Husband filed a memorandum in opposition. We are not persuaded by his arguments and affirm.

**DISCUSSION**

**A.    Denial of Continuance**

Wife's motion to enforce was filed July 2, 2008. [RP 23] Husband did not file a response until October 14, 2008, [RP 34] which was the date of the hearing on the motion to enforce. [RP 31] On the date of the hearing, Husband requested a continuance. [DS 4] The court denied it and, according to Husband, refused to consider his "affirmative defenses" due to "surprise." [DS 4] Husband argues that the

court should have granted his request for a continuance and that the court acted improperly in declining to consider his affirmative defenses. [DS 5-7; MIO 1-2] Husband likens the court's action to granting a default judgment. [DS 7-8]

We reject these arguments. We review the court's ruling on a motion for continuance for an abuse of discretion. *See Bombach v. Battershell*, 105 N.M. 625, 626, 735 P.2d 1131, 1132 (1987). On October 14, the matter had been scheduled for over three months. Husband did not file a timely response as required by Rule 1-007 NMRA. Instead, he waited until the day of the hearing. Even accepting Husband's assertion that he was not served with a copy of the motion until September 14, Husband still had one month to respond. [DS 6] If Husband wanted a continuance, we see no reason why he could not have filed a motion before the day of the hearing. Under the circumstances, we conclude that the court could proceed with its docket as scheduled, and did not abuse its discretion. *Cf. Avlin, Inc. v. Manis*, 1998-NMCA-011, ¶ 12, 124 N.M. 544, 953 P.2d 309 (filed 1997) (affirming monetary sanction against an attorney who filed a late response the afternoon before the hearing that had been scheduled for one month, reasoning that the court had inherent authority to regulate its docket and promote judicial efficiency).

We also disagree with Husband's premise that he was not allowed to present

his "affirmative defenses." Our calendar notice observed that the problem caused by Husband's lateness was discussed, but the tape log indicates that the court did not make a ruling. We noted that, instead, the court appears to have taken the matter under advisement. [RP 44] We further observed that the record did not reflect that the court thereafter made any ruling that it would not consider Husband's arguments, that the record did not appear to indicate any restriction on Husband's ability to present his evidence, and that it did not contain any indication that Husband's counsel was precluded from advancing any argument. [RP 51] Our notice also observed that it appeared that the court did consider the defenses raised in Husband's response, and a review of the Minute Order indicated that the court did consider at least one of Husband's defenses. [RP 55, ¶ 2(b) (addressing Husband's defense [RP 35, ¶ 7] claim that military retirement benefits cannot be paid directly to Wife)].

In his memorandum, Husband does not contest our assumptions. Instead, he states that he is relying on the argument in his docketing statement. [MIO 1] "Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law." *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683. We conclude that Husband has not done so. To the extent he argues that the sanction was

disproportionate to what he contends was a short delay and to the fact that Wife "waited over a decade to bring her claims," [MIO 2] we are not persuaded. The fact remains that Husband waited until the day of the hearing to file his response. Husband's argument that Wife was dilatory ignores the fact that he hid the fact that he was receiving benefits for a long period of time without notifying her.

Finally, even if we were to accept Husband's premise that the court limited Husband's ability to present material that had been presented on the day of the hearing, it would be an appropriate sanction for Husband's unexplained and unjustified attempt to unfairly surprise Wife on the day of the hearing. *Cf. Santistevan v. Centinel Bank of Taos*, 96 N.M. 730, 732-33, 634 P.2d 1282, 1284-85 (1981) (noting that a party may waive an affirmative defense where it waits until the eleventh hour to raise it).

For all of these reasons, we hold that no error or abuse of discretion has been demonstrated.

**B.      Interpretation of the MSA**

Husband contends that the court erred in its interpretation of the marital settlement agreement. He argues that under the language of the agreement, Wife was not entitled to 10% of the payments when they were actually made, but rather that she

was entitled to 10% of the payments to which Wife would have been entitled in 1980. Under Husband's interpretation, this amount would be frozen at $168.18 per month. [DS 2; MIO 2-8]

Marital settlement agreements are contracts and are subject to contract law. *See Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675. Contracts are enforced as written unless they are ambiguous. *Cf. Marshall v. Providence Wash. Ins. Co.*, 1997-NMCA-122, ¶ 22, 124 N.M. 381, 951 P.2d 76. "A contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. Whether ambiguity exists is a question of law; therefore, this Court reviews the district court's decision de novo." *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 14, 131 N.M. 450, 38 P.3d 891 (filed 2001) (citation omitted). "[W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651.

The settlement agreement [RP 16] provided:

[Husband] owns a non-vested Military Service Retirement Annuity arising from his employment during the marriage, which he acknowledges to be a community asset. [Husband] now declares himself to be a trustee, for [Wife's] benefit, of ten per cent (10%) of his present

6

vested or contingent rights in said Military Retirement Annuity and any substitute or successor plans arising from his military employment. *As Trustee, [Husband] agrees that, when he receives any such benefit, he will promptly pay to [Wife] ten per cent (10%) of each payment received from the plan or plans, each month.* (Emphasis added.)

We disagree with Husband's argument that Wife was entitled to 10% of the payment to which she would have been entitled in 1980, $168.18 per month. The language we have emphasized unambiguously recognizes that the payments, if any, will be made in the future. The language, "when [Husband] receives any such benefit," he will pay 10% of "each payment received" clearly reflects the understanding that the payments will be made in the future, and at that future time, Wife will be entitled to 10% of each payment as it is made.

Husband argues that the reference to "present contingent rights" equates with an interpretation that the amount of the payments was locked in as of 1980. [MIO 2-8] We disagree. The reference to "contingent" benefits did nothing more than recognize that there were uncertainties about when the future payments would begin, how much they might be, or whether there would be any retirement benefits at all. Husband admits that, when the MSA was made in 1980, "New Mexico precedent at the time was highly uncertain as to whether [Wife] could claim *any* interest in [Husband's] retirement benefits." [MIO 8] Given this context, the reference to "present vested or

contingent rights" only recognizes that, although the retirement benefits were not vested and payable in 1980, during the marriage Husband had accrued time toward a military pension that might ripen in the future, and that whatever interest Husband had in his benefits in 1980, some portion of that may well have been community property.

In our view, the language on which Husband relies describes the nature of the benefits. By contrast, the language we have emphasized focuses on the time the benefits are received and plainly provides that "when he receives any such benefit, he will promptly pay to [Wife] ten per cent (10%) of each payment received from the plan or plans, each month." We believe this language clearly captures the idea that the correct valuation is determined "when" each payment is received.

Husband also argues that the court did not have the power to "reform" the agreement. [MIO 8] However, the court did not reform the agreement. Rather, as we have discussed, the court enforced the agreement as it was written.

**C.    Laches**

Husband argues that Wife's claims prior to July 1, 2004 are barred by laches or the applicable statute of limitations. [DS 17]   In his memorandum, he no longer seriously pursues this argument and instead contends that "she was allowed . . . to sit

on her rights." [MIO 10] We reject this argument. The court considered the testimony of the parties and found that Husband did not tell Wife he had retired and had begun to draw benefits. Accordingly, Husband cannot fail to inform Wife and now claim that Wife's recovery is barred either by laches or the statute of limitations. *See Garcia v. Garcia*, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991) (stating that in order to rely on laches, the party must show that the other party engaged in delay despite knowledge of the facts and an opportunity to institute a suit); *Beneficial Fin. Co. of N.M. v. Alarcon*, 112 N.M. 420, 425, 816 P.2d 489, 494 (1991) (stating that "where a party against whom the cause of action accrues prevents the one entitled to bring the cause from obtaining knowledge thereof by fraudulent concealment," the statute of limitations does not begin to run until the right of action is discovered (internal quotation marks and citation omitted)).

**D.    Prejudgment Interest**

Husband argues that the court erred in awarding prejudgment interest. [DS 17; MIO 10-12] He argues that the court could not do so because the settlement agreement did not provide for it, and there is no statutory authority for the award. [DS 17; MIO 11-12]

A court in a divorce action may award interest as in other cases, and we review

9

the court's decision for an abuse of discretion. *See Jurado v. Jurado*, 119 N.M. 522, 531, 892 P.2d 969, 978 (Ct. App. 1995).

We disagree with Husband's argument. A marital settlement agreement is a contract. *See Herrera*, 1999-NMCA-034, ¶ 9. Husband's breach of fiduciary duty and his breach of the MSA deprived Wife of the use of payments, to which she was entitled, over a significant period of time. Accordingly, the court could award prejudgment interest as a part of damages. *See* NMSA 1978, § 56-8-3 (1983) (stating that prejudgment interest may be awarded for breach of contract); *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 488, 709 P.2d 649, 657 (1985) (stating that "[c]ontract damage awards against one who fails to perform should fully compensate the injured party for all damages naturally flowing from such breach" and that "[p]rejudgment interest is meant to compensate a plaintiff for injury resulting from deprivation of the promised performance and for loss of the use and earning power of [the] plaintiff's own funds"). Here, Husband wrongfully retained money that was due to Wife, and the award of prejudgment interest compensated Wife for her loss of the use of the money. As such, it was properly awarded as an element of damages to ensure that Wife was made whole. We conclude that no abuse of discretion has been shown. *See Jurado*, 119 N.M. at 531, 892 P.2d at 978.

Finally, we observe that some of the issues raised in Husband's docketing statement and addressed by our notice have not been discussed in his memorandum in opposition. We need not address those issues further. *See State v. Johnson*, 107 N.M. 356, 358, 758 P.2d 306, 308 (Ct. App. 1988) (stating that when a case is decided on the summary calendar, an issue is deemed abandoned when a party fails to respond to the proposed disposition of the issue).

For all of these reasons, we affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**