800 P.2d 216

**Michael BAYER, Petitioner–Appellant,**

**v.**

**Mary B. BAYER, Respondent–Appellee.**

**No. 10689.**

Court of Appeals of New Mexico.

Sept. 14, 1990.

Certiorari Denied Oct. 24, 1990.

Ralph E. Ellinwood, John F. Schaber, P.A., Deming, for petitioner-appellant.

E.H. Williams, Las Cruces, for respondent-appellee.

## OPINION

MINZNER, Judge.

On the court's own motion, the prior opinion filed in this case is withdrawn and the following is substituted.

Husband appeals from that portion of the final divorce decree apportioning the proceeds from the sale of a farm (the McNary Farm) between him and wife. On appeal, husband claims the trial court erred in awarding wife any portion of the proceeds. This case presents issues of first impression in New Mexico concerning the burden of proof in establishing a community property interest in the enhanced value of separate property created by improvements and renovations attributable to community labor and the trial court's discretion

in apportioning such enhanced value. For the reasons that follow, we vacate the division of property and remand for further proceedings.

Husband acquired the McNary Farm, which is located in Texas, in 1972 for $29,-132.70, five months before he married wife, and it was sold during the marriage in 1985. He made a down payment of $8,707.50 and took out a loan of $20,425.20. The trial court found that the loan was paid in full by November 1984; that the total sum paid on the loan was approximately $33,000; and that husband made all payments on the loan from a separate account into which he had deposited his retirement disability compensation. The court also found that husband's right to the compensation accrued prior to marriage. The trial court additionally adopted a finding of fact that "[n]o evidence was presented as to amounts spent to improve the [McNary Farm] property."

The McNary Farm consists of 152 acres plus improvements. At the time of purchase, the improvements consisted of an unpainted cinderblock residence with a tar paper roof, an adobe building with a fallen-in roof, and two hay sheds. Wife described the farm as not habitable at the time of purchase and testified that she and her children helped improve the farm in the months prior to and after the marriage. The renovations included painting, installation of a new roof and addition of a room and patio to the residence, road improvement and leveling, repair of fences, wells, and ditches, and clearing land. The only evidence concerning the value of the improvements was contained in a 1984 tax assessment of the farm, which indicated that the land had a market value of $82,892 and the improvements had a market value of $24,120, or a total market value of $107,-012. Husband sold the McNary Farm in February 1985 for $155,000, less a sales commission of $10,000 and fees of $1,012, or approximately $144,000. Husband received $10,000 earnest money, a $10,000 promissory note, and a Deed of Trust for the balance due. Subsequently, husband purchased property in Columbus, New

Mexico, secured by a loan for which the promissory note was collateral. It is unclear what disposition was made of the earnest money. The trial court's order apportioning the proceeds of the sale of the McNary Farm is directed at the balance due on the Deed of Trust.

During the marriage, only wife was employed. Her earnings were deposited in a separate account and used for household expenses. The trial court found that from the date of the marriage until the sale of the McNary Farm, husband "devoted his personal time, labors and efforts to the impovement [sic] of the McNary property" on a full-time basis.

Wife asked the court to apportion 73 percent of the proceeds of the sale of the McNary Farm to community property on the theory that 73 percent of the initial purchase price was paid during the time husband and wife were married. The trial court found that, to do substantial justice based on the facts, the proceeds of the sale of the farm should be apportioned between husband and wife. The trial court's findings and conclusions indicate that the court relied on *Portillo v. Shappie,* 97 N.M. 59, 636 P.2d 878 (1981), in reaching its decision that the community was entitled to a portion of the proceeds from the sale of the McNary Farm. In considering motions for reconsideration, the trial court reviewed various methods of apportionment approved in New Mexico cases. *See Hughes v. Hughes,* 101 N.M. 74, 678 P.2d 702 (1984); *Portillo v. Shappie; Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976); *Dorbin v. Dorbin,* 105 N.M. 263, 731 P.2d 959 (Ct.App.1986). The court concluded that no one method of apportionment is required, *Portillo v. Shappie,* and that, for lack of evidence of inherent unfairness, none of the methods previously approved was appropriate. Thus, the court made its own calculation.

In making its calculation, the trial court hypothetically assigned half of the net proceeds to each party, added to husband's share his costs ($8,700 + $33,000) in acquiring the property, and deducted the same amount from wife's share. There-

after, the court calculated the percentage of the proceeds represented by husband's share ($113,700 divided by $144,000 = 79 percent) and by wife's share ($30,300 divided by $144,000 = 21 percent). The court found that fifteen annual payments were due under the Deed of Trust and that the first had been used to pay community debts. The court awarded wife 21 percent of the second payment due, payable in installments, and 21 percent of the remaining payments, to be paid by the escrow agent.

Husband raises three issues: (1) the trial court erred because there was no evidence that the community acquired any interest in the farm; (2) there was no substantial evidence to support the trial court's findings that wife, her minor children, and husband worked to improve the farm after the marriage and that husband "on a *full time basis,* devoted his personal time, labors and efforts to the impovements [sic] of the [farm];" (emphasis in original) (3) the trial court erred in denying husband's motion to reconsider the decision apportioning the proceeds. Husband's three issues are closely related. Essentially, he contends that wife had the burden of proving that the community had acquired an interest in the farm, which she failed to satisfy. *See Laughlin v. Laughlin,* 49 N.M. 20, 155 P.2d 1010 (1944); *Dorbin v. Dorbin.* He explicitly contends that the findings on which the trial court reached its conclusion as to apportionment are not supported by substantial evidence and implicitly contends that the findings made are not sufficient to support the conclusion. We first address the argument concerning the findings made. We conclude that the trial court's findings concerning the wife's interest in the McNary Farm are not sufficient to support the trial court's conclusions for allocating wife a 21 percent interest in the sale proceeds.

■ Although the McNary Farm was located in Texas and the parties were residents of Texas prior to moving to New Mexico, neither party has asserted that Texas law governs wife's claim of a community interest in the property or the disposition of the sale proceeds. In the ab-

sence of pleading or proof, New Mexico courts will presume that the law of a sister state is the same as that of the forum. *See Larson v. Occidental Fire & Casualty Co.*, 79 N.M. 562, 446 P.2d 210 (1968), *overruled on other grounds, Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985); *see also In re Mary L.*, 108 N.M. 702, 778 P.2d 449 (Ct.App. 1989). No argument to the contrary was made at trial, and thus no issue as to the governing law was preserved on appeal. *See* SCRA 1986, 12–216(A). Therefore, as did the trial court, we apply New Mexico law to the characterization problem.

█ We believe that the trial court's findings that wife contributed labor toward the enhanced value of the McNary Farm and that husband devoted himself full-time to improving the farm are supported by the evidence. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Register v. Roberson Constr. Co.*, 106 N.M. 243, 741 P.2d 1364 (1987). Here, wife testified that she and her children worked to make the farm habitable and that such efforts included work on the farm's structures, plumbing, and fields. Husband does not contest the fact that evidence was presented that during the course of the marriage he had no other job or employment. The evidence showed that he had retired prior to the date he and wife married.

The court's evidentiary findings lend some support to an ultimate finding that the community contributed to the enhanced value of the farm. *See Newcum v. Lawson*, 101 N.M. 448, 684 P.2d 534 (Ct.App. 1984) (findings of fact adopted by the court are to be construed so as to uphold rather than defeat the judgment, and, if from the facts found, other necessary facts to support the judgment may reasonably be inferred, the trial court's judgment will not be disturbed on appeal). However, there are no findings as to the amount by which the community labor enhanced the value of the farm. Absent such a finding, the trial court's conclusion that wife is entitled to 21 percent of the remaining payments due under the Deed of Trust cannot stand. The

trial court found that no evidence was presented as to the amounts spent to improve the farm, and wife's answer brief fails to point out any evidence specifically placing a value on community improvements or renovations to the farm.

█ Wife had the burden of proof in establishing the community's interest in the sale proceeds. The proceeds were received during the marriage, and the presumption is that they were community property. *See* NMSA 1978, § 40–3–12(A) (Repl.Pamp.1989). Nevertheless, husband traced the proceeds to the sale of property which he had acquired prior to marriage. Property acquired in community property states takes its status as community or separate at the time it is acquired, and by manner of acquisition. *Laughlin v. Laughlin.* Here, the property was acquired prior to marriage, and the funds used for the down payment, as well as to satisfy the loan, were separate property. Under these circumstances, husband traced the proceeds to separate property. *Cf. Cayce v. Carter Oil Co.*, 618 F.2d 669 (10th Cir.1980) (where wife was sole owner of property at time of sale, she was sole owner of proceeds). The fact that part of the purchase price was not paid until after marriage does not defeat husband's showing. *Hollingsworth v. Hicks*, 57 N.M. 336, 258 P.2d 724 (1953). The word "acquired," within the rule that the status of property is fixed as of the time it is acquired, refers to the inception of title. *Id.* If some portion of the purchase monies for the farm had been paid with community funds, the supreme court has indicated that the community would have had an equitable lien or charge on the property. *See Gillespie v. Gillespie*, 84 N.M. 618, 506 P.2d 775 (1973); *cf. Portillo v. Shappie* (community entitled to lien in the amount of enhanced value in separate property contributed by community funds expended and value of community labor). However, here the trial court found, and wife does not dispute on appeal, that the McNary Farm was purchased with separate funds.

█ By statute, the income, fruits, and natural increase in the value of separate

property remain separate property. *See* NMSA 1978, § 40–3–8(C) (Repl.Pamp.1989); *see also Dorbin v. Dorbin.* Where the separate character of property is established, it maintains that character until the contrary has been made to appear by direct and positive evidence. *Katson v. Katson,* 43 N.M. 214, 89 P.2d 524 (1939); *accord In re Marriage of Johnson,* 28 Wash.App. 574, 625 P.2d 720 (1981). Therefore, any increase in the value of separate property is presumed to be separate property. *In re Marriage of Elam,* 97 Wash.2d 811, 650 P.2d 213 (1982) (En Banc). The presumption may be rebutted by direct and positive evidence that the increase is attributable to community funds or labor. *Id.; accord Suter v. Suter,* 97 Idaho 461, 546 P.2d 1169 (1976); *Sherry v. Sherry,* 108 Idaho 645, 701 P.2d 265 (Ct.App.1985).

As Judge Kass has noted in *Dorbin,* apportionment is a legal concept that is properly applied to an asset acquired " 'with mixed monies'—that is, partly with community and partly with separate funds." 105 N.M. at 268, 731 P.2d at 964. In *Portillo,* the supreme court held that the community had acquired an interest in the enhanced value of separate property and, as Judge Kass notes, appeared to apply the concept of apportionment rather than reimbursement. In *Portillo,* the parties agreed that the house was wife's separate property and that the community had made substantial contributions to its enhanced value. The court noted that New Mexico has abandoned the Spanish or civil rule that rents, issues, and profits of a spouse's separate property are community property if they are received during marriage and, as a consequence, the community does not receive the benefit of profits generated by the separate property it has improved. The court concludes that limiting the community to the amount of money spent may produce results that, on the facts of the case, are unfair either to the separate estate or to the community, depending on whether the property has increased or decreased in value. The *Portillo* court indicated that it will adhere to its long-standing rule of "doing substantial

justice, based on the facts of each case." 97 N.M. at 64, 636 P.2d at 883.

■ The first question presented by this appeal is under what circumstances the trial court's broad discretion to determine a method of apportionment is applicable. *See generally* W. Ellis, *The Impact of* Portillo v. Shappie *on New Mexico Community Property Law,* Section on Women's Legal Rights and Obligations Newsletter, Vol. III, No. 3, 6, at 9–10 (May 31, 1982) (discussing the substantial justice standard announced in *Portillo* and indicating that the trial court's first obligation is to classify all property as either community or separate, because only then is it possible to determine whether community money or labor has benefited separate property). In dealing with an increase in the value of separate property that is attributable to both community and separate property, the trial court has discretion in separating the increase attributable to the separate property from that attributable to the community in order to produce substantial justice. However, that discretion must be based on the evidence produced at trial. Here, there was insufficient evidence to support an exercise of the trial court's discretion to apportion because there was insufficient evidence of the amount attributable to community property contributions.

The trial court found that husband devoted himself full-time for thirteen years to improving the farm. Under *Portillo,* the trial court had discretion to classify the value added by the improvements as community property, to be divided between the parties. Assuming that all of the value added by the improvements was attributable to the community, wife would have been entitled to half of $34,100. However, the record does not indicate that all of the improvements were attributable to the community.

Based on the tax assessment, there was evidence from which the trial court might have found that the improvements represented 22 percent of the market value in 1984. Since the sale occurred in early 1985, we think the trial court might have found that 22 percent of the sale proceeds

were attributable to the improvements. If the trial court was entitled to find that all of the value added by improvements was attributable to community labor, it was entitled to conclude that 22 percent of the market value in 1985 was community property. Twenty-two percent of $155,000 would be $34,100.

However, the evidence in the record would not support a finding that all of the value added by improvements was attributable to community labor. It is undisputed that there were some improvements on the farm when husband purchased it. We do not think wife's testimony that the farm was not habitable will support a finding that the existing improvements had no value or that they contributed nothing to the enhanced value of the farm, and the record supports an inference that some of the labor was contributed prior to the marriage. Further, as noted earlier, the trial court found no evidence was presented as to amounts spent to improve the farm. Thus, we do not know whether any of the value added during marriage was attributable in part to husband's retirement income, which, based on the court's findings, was his separate property.

■ Our review of the record indicates that although wife offered some evidence that community labor and funds had enhanced the value of the farm, the evidence presented failed to establish any monetary value for the community labor or funds used to improve the farm or the amount of value added by particular improvements made after marriage. Absent evidence of the value of the community labor or the amount of community funds expended to improve the separate property of another or any other evidence tending to show the amount of value added by particular improvements, the amount of any community interest in that property or right to reimbursement is speculative and uncertain. *Cf. Sherry v. Sherry* (husband presented evidence of community expenditures made on wife's separate property but presented no evidence of the amount of increase in value of property). Wife had the burden of proof to establish with reasonable certainty

the amount or value of any community interest in husband's separate property. *Id.*

In *Suter*, the Idaho Supreme Court considered an issue analogous to the problems presented here. There, the trial court found wife had presented evidence that the community enhanced the value of husband's separately owned farm, but that the evidence was insufficient to establish the value of the claimed improvements. On appeal the Supreme Court stated:

[W]hen community efforts, labor, industry, or funds enhance the value of separate property, such enhancement is community property for which the community is entitled to reimbursement. The measure of the reimbursement for community expenditures on separate property is the increase in value of the property attributable thereto, not the amount or value of the community contribution. The party seeking such reimbursement to the community carries the burden of demonstrating that the community expenditures have enhanced the value of the separate property, and the amount of the enhancement. * * * We agree that the appellant failed in her burden of demonstrating the amount of enhancement attributable to community expenditures, with one exception. [Citations omitted.]

*Id.* 97 Idaho at 465–66, 546 P.2d at 1173–74. We think the rationale applied by the court in *Suter* is also applicable to the instant case.

■ Increases in the value of separate property arising from an increase in market value or natural growth belong to the owner of the separate property. *See Laughlin v. Laughlin; Katson v. Katson; see also Suter v. Suter; Sherry v. Sherry. Contra Cockrill v. Cockrill,* 124 Ariz. 50, 601 P.2d 1334 (1979) (burden of proof is upon spouse contending increase in separate property is result of inherent value of property itself and not the product of the work effort of the community). New Mexico follows the statutory rule that separate property includes the income, fruits, and natural increase in value of that property. *See In re Marriage of Elam.*

We recognize that the approach adopted by the Arizona Supreme Court in *Cockrill* is more consistent with the original principles of Spanish law, under which spouses contributed to the marital partnership not only their talents and labor but the use of all separate property owned before marriage or acquired thereafter. *See generally* W. Reppy, Jr. & W. de Funiak, *Community Property in the United States* 247–64 (1975) (discussing problems of apportioning rents, profits, and increase of separate property). New Mexico follows the majority American rule that gains in the form of rents and profits, as well as natural increase, are separate property. *Id.* at 248–49; *see also* § 40-3-8(C). Until such time as the legislature changes the statute, or the supreme court adopts a different presumption, we believe the approach adopted by the Washington Supreme Court in *Elam*, rather than the approach adopted by the Arizona Supreme Court in *Cockrill*, is preferable. It provides predictability for individual lawyers and litigants in negotiating property settlements, and it more adequately protects the separate property interest our legislature and supreme court have recognized.

We see no reason in this case why wife could not have satisfied her burden of proof. She might have testified as to the value of the services rendered by her children or by husband in improving the farm. *Cf. State v. Hughes*, 108 N.M. 143, 767 P.2d 382 (Ct.App.1988) (testimony of plant employee concerning value of personal property stolen from plant was sufficient to establish that value of equipment received by defendant was more than $100, where employee knew amount he, as an informed buyer, would have paid). Had she done so, there would have been evidence to support a claim for reimbursement. *See Dorbin v. Dorbin.* Alternatively, wife might have attempted to establish the value added with community labor by testifying to the value of the improvements made and renovations accomplished with community labor. *Compare Lahr v. Lahr*, 82 N.M. 223, 478 P.2d 551 (1970) (wife, as owner of community property, was entitled to give her opinion as to its value; wife's uncontradicted testimony as to value of tract of community property, in proceeding for division of property in divorce action, must be accepted) *with In re Marriage of Elam* (husband testified to amount of value added by prenuptial improvements he made to wife's separate property; court relied on husband's testimony to calculate value of separate property at time of marriage). The trial court stated in an order entered on husband's motion for reconsideration that "there [was] no evidence of the *unimproved* value of the farm *at date of divorce.* Additionally, it is unrebutted that husband used *separate* funds to pay off the farm mortgage as well as for improvements." (Emphasis in original.)

■ Under these circumstances, the trial court's decision to apportion some of the proceeds from the sale of the McNary Farm to the community is not supported by the record. The court's findings do not support the amount apportioned to the community, and there is insufficient evidence in the record to justify remand for redetermination of a different sum due the community under *Portillo.* While the trial court is authorized to use any method of apportionment that will accomplish substantial justice, there must be evidence to support a conclusion that the community has acquired an interest in the property being apportioned. Here, the theory under which the trial court proceeded was that the community had acquired an interest in the proceeds due to the amount by which the improvements attributable to community labor had enhanced the market value of the farm. Because wife failed to meet her burden to produce evidence as to the value of improvements attributable to community labor or the amount by which those improvements enhanced the market value, we cannot say that the evidence was sufficient to support a finding that the community acquired an interest in the proceeds. *Cf. Josephson v. Josephson*, 115 Idaho 1142, 772 P.2d 1236 (Ct.App.1989) (community not entitled to reimbursements for improvements made, where wife failed to convince magistrate that improvements en-

hanced value); *see also In re Marriage of Johnson.*

A final issue raised by this appeal is what relief would be appropriate. One intermediate appellate court has suggested that if the overall division of property appears to be just and equitable, a mischaracterization of property as community rather than separate does not require reversal. *See In re Marriage of Brady,* 50 Wash. App. 728, 750 P.2d 654 (1988). The court observes, "The ultimate obligation of the trial court in circumstances such as these is to arrive at a fair, just and equitable distribution of assets and liabilities regardless of their characterization as separate or community." *Id.* at 731, 750 P.2d at 655–56. A different panel of the same court has held that remand is necessary if (1) the trial court's reasoning in distributing the property was significantly influenced by its mischaracterization, and (2) had it properly characterized the property, it is not clear the trial court would have divided it in the same way. *See In re Marriage of Shannon,* 55 Wash.App. 137, 777 P.2d 8 (1989).

 The Washington statute on which the two panels of the Washington Court of Appeals relied, however, explicitly gives the trial court wide discretion in division of separate property. *See* Wash.Rev.Code Ann. § 26.09.080 (Cum.1986).[1] The New Mexico statute is more limited. *See* NMSA 1978, § 40–4–7(B) (Repl.Pamp.1989). On final hearing, a New Mexico court may award either party such a reasonable portion of a spouse's separate property as alimony, as under the circumstances of the

case may seem just and proper. In this case, although wife requested alimony, the trial court found she had failed to show need.[2] That finding was not challenged on appeal; wife did not file a cross-appeal, nor has she raised the issue for purposes of enabling this court to affirm. *See* SCRA 1986, 12–201(B), (C) (Cum.Supp.1990). Consequently, any error in the failure to award alimony has not been preserved on appeal.

Therefore, that portion of the final decree awarding wife an interest in the payments due under the Deed of Trust is vacated, and the case is remanded for further proceedings consistent with this opinion. On remand, the court in its discretion may reconsider the fairness and equity of the balance of the property division and make whatever adjustments are necessary to achieve a fair and equitable division and disposition of the parties' property and other interests. *See Blake v. Blake,* 102 N.M. 354, 695 P.2d 838 (Ct.App.1985); *cf. In re Marriage of Johnson* (mischaracterization of inflationary increases as community property required remand to trial court so that it might consider fairness and equity of its property division). No attorney fees are awarded. Husband shall recover his appellate costs.

IT IS SO ORDERED.

BIVINS, C.J., and DONNELLY, J., concur.

---

1. Section 26.09.080 reads as follows:

   **26.09.080. Disposition of property and liability—Factors.**

   In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

   (1) The nature and extent of the community property;
   (2) The nature and extent of the separate property;
   (3) The duration of the marriage; and
   (4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

2. Although the trial court also indicated it lacked jurisdiction to award alimony, we disagree. The court had reserved jurisdiction over all issues remaining after dissolution of the marriage.