# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **September 5, 2018**

**No. A-1-CA-35260**

**PETE VANDERLUGT,**

      **Petitioner-Appellant,**

**v.**

**KRISTINA VANDERLUGT,**
**n/k/a KRISTINA CERVANTES,**

      **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**J.C. Robinson, District Judge**

Caren I. Friedman
Santa Fe, NM

for Appellant

Kerry Kiernan, P.C.
Kerry Kiernan
Albuquerque, NM

for Appellee

**OPINION**

**KIEHNE, Judge.**

**{1}** Pete VanderLugt (Husband) appeals the district court's order following a bench trial on property division issues in connection with his divorce from Kristina VanderLugt, n/k/a Kristina Cervantes (Wife). Husband raises four issues: (1) whether the district court erred in determining that Wife had a community lien interest in the assets of an irrevocable trust; (2) whether the district court abused its discretion in limiting Husband's discovery into Wife's various business enterprises; (3) whether the district court abused its discretion in allowing Wife's expert witness on trusts and estate planning to testify about the irrevocable trust at trial; and (4) whether the district court erred in concluding that Wife had separate and community lien interests in proceeds from the sale of Husband's separate property.

**{2}** This is the second time this case has come before this Court. On the first appeal, we remanded this case to the district court because there was no final, appealable judgment on the irrevocable trust issue. *See VanderLugt v. VanderLugt*, No. 32,950, mem. op. ¶¶ 10-11 (N.M. Ct. App. Feb. 25, 2015) (non-precedential).

**{3}** We now reverse the district court's decision that there was a community lien interest in the irrevocable trust and that Wife was entitled to a share of it. This ruling makes it unnecessary to decide Husband's claim that Wife's expert witness

should not have been allowed to testify about the irrevocable trust. We affirm the district court on all other issues.

**BACKGROUND**

{4}    The parties were married in May 1998 and separated in May 2010. They had two children during the course of their marriage. The district court held a bench trial in March 2013 to decide property division issues that the parties were unable to agree on. Additional facts are developed below as needed to discuss the issues raised by Husband on appeal.

**DISCUSSION**

**I.    Wife had no interest in the VanderLugt Irrevocable Trust**

{5}    We first address Husband's claim that the district court improperly granted Wife a community lien interest in the corpus of an irrevocable life insurance trust set up by Husband before the couple married.

**A.    Background of the VanderLugt Irrevocable Trust**

{6}    Husband created the VanderLugt Irrevocable Trust (the Trust) in 1992, funding it in 1994 with a life insurance policy on Husband's life, which is the Trust's only asset. The Trust is the owner of the life insurance policy. Husband's father is the trustee, and the beneficiaries as stated in the Trust instrument are Husband's spouse if he is married at the time of his death, and if he is not married at the time of his death, then the Trust assets are to be held in a separate trust for

his children. Fifteen percent of the Trust assets are to be distributed to various charitable organizations. At the time the Trust was set up, Husband was not married, not about to get married, and had no children. The Trust instrument stated that it "is and shall be irrevocable and shall not be altered, amended, revoked, or terminated by the [s]ettlor, or any other person." The parties stipulated that as of February 2012, the net death benefit of the policy was $5,017,376, and the net cash value of the policy was $726,759.91.

{7}     For several years after they married, the parties paid premiums on the policy using community funds until the policy became "self-funding," meaning that the premiums were paid using a combination of dividends earned on the policy and loans against its cash value. From 2000-2003, the premium payments made by the community were treated as a gift to the parties' children for tax purposes. At the time of trial, the parties' children were the only beneficiaries of the Trust because Wife lost her status as a beneficiary upon divorcing Husband and Husband had not remarried.

{8}     After trial, the district court found that Husband set up the Trust for estate planning purposes and found that the only significant asset in Husband's estate was the life insurance policy. It further found that the community paid $289,128.68 in premiums on the policy before it became self-funding. Further, the district court found that the dividends were partially earned by the community premium

3

payments. Relying on figures provided by Wife's expert witness in accounting, the district court determined that the community had a community lien interest in the Trust of $519,520.12. The district court ordered that Wife receive one-half of the community lien interest, i.e., $259,760.06. After the first appeal, the district court noted that because neither party had joined the trustee or trust beneficiaries to the dissolution of marriage proceeding, it did not have jurisdiction over them, and concluded that Wife would have to bring a separate action to enforce and collect her lien against the Sun Life Policy. The district court also found that "[i]t is inequitable for [Wife] not to receive her interest in the Sun Life Policy particularly when [Husband]'s father is the Trustee and [Husband] can benefit during his lifetime from distributions and loans to a subsequent spouse, future children and/or the parties children the Trustee determines to be in the beneficiary's interest."

{9}     Wife argues that we should uphold the decision of the district court that the community acquired a community lien interest in the Sun Life Policy and that she is entitled to one-half of that interest. She urges this Court to hold that it would be inequitable not to allow her to receive this interest. Husband, on the other hand, argues that the Sun Life Policy, as the sole asset of an irrevocable trust, is neither a community asset nor a separate asset of either party and therefore was not subject to property division.

4

**B. The law governing property division and trusts**

{10} Under New Mexico community property law, "property…takes its status as community or separate at the time it is acquired, and by manner of acquisition." *Bayer v. Bayer*, 1990-NMCA-106, ¶ 12, 110 N.M. 782, 800 P.2d 216. "Community property consists of all property acquired by either or both spouses during marriage, which is not separate property, and its rents, issues and profits." *Portillo v. Shappie*, 1981-NMSC-119, ¶ 12, 97 N.M. 59, 636 P.2d 878 (internal quotation marks and citation omitted). In divorce proceedings, trial courts are to divide the community property equally. *Irwin v. Irwin*, 1996-NMCA-007, ¶ 10, 121 N.M. 266, 910 P.2d 342. Separate property is not subject to division, but the community may obtain a lien interest in the increased value of separate property of a spouse if community funds or labor are expended which increase the value of the separate property. *See Trego v. Scott*, 1998-NMCA-080, ¶ 8, 125 N.M. 323, 961 P.2d 168; *Jurado v. Jurado*, 1995-NMCA-014, ¶ 19, 119 N.M. 522, 892 P.2d 969; Brett R. Turner, *Division of Third-Party Property in Divorce Cases*, 18 J. Am. Acad. Matrim. Law 375, 377 (2003) [hereinafter *Third-Party Property*] ("[S]eparate property is awarded to the spouse who holds legal title."). A community lien is an interest that the community obtains in the separate property of one of the spouses to a marriage. *See Jurado*, 1995-NMCA-014, ¶ 10 ("The community is entitled to a lien against the separate property of a spouse for the

5

enhanced value of such property attributable to community labor during the marriage."). Wife has the burden of proof of establishing the community interest in the sale of the proceeds. *See Bayer*, 1990-NMCA-106, ¶ 12.

**{11}** Generally, however, if property does not belong to either spouse, then it is not subject to division in a divorce case. *See Third-Party Property*, *supra*, at 377 ("The general rule is that third-party property is not subject to division [in a divorce proceeding]."). Third-party property is not separate property of either spouse. *Id.* at 379 ("[P]roperty owned by a third party is neither marital nor separate property, but rather a distinct category of property in itself.").

**{12}** The question before us is a matter of first impression—whether an irrevocable life insurance trust is divisible as community property where neither spouse is a trustee or beneficiary. "A trust may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another." Amy Morris Hess, George Gleason Bogert, & George Taylor Bogert, *Bogert's The Law of Trusts & Trustees*, § 1 (June 2018) [hereinafter *Bogert's*] (emphasis omitted). Trusts have been increasingly recognized as legal entities, which consist of the trust estate and the fiduciary relation between the trustee and beneficiaries. Restatement (Third) of Trusts § 2 cmt. a (2018). The trustee holds property for the benefit of the beneficiary. *Id.* Generally, the trustee is considered to hold legal title

6

to the trust property, while the beneficiary holds equitable title to the trust property. *See Bogert's*, *supra* § 1 ("A trustee's title usually is legal, but it may be equitable if the settlor expresses the intent to give such an interest and has the capacity to do so."); Restatement (Third) of Trusts § 2 cmt. d ("Although trust beneficiaries have equitable title, a trustee's title to trust property may be either legal or equitable."). In divorce cases, a court generally may only divide the spouses' equitable interest in the property. *Third-Party Property*, *supra*, at 389.

{13}    An irrevocable trust is a trust which cannot be revoked by the settlor—the settlor being the person who creates or contributes property to the trust. *See Bogert's*, *supra* §§ 1, 998; *see also* NMSA 1978, § 46A-1-103(O) (2007, amended 2018) (defining "settlor" as "a person, including a testator, who creates or contributes property to a trust"). Once an irrevocable trust has been created, with few exceptions, the settlor does not have any legal relationship with the beneficiaries or trustee of the trust, and does not have rights, liabilities, or powers over trust administration. *See Bogert's*, *supra* § 42.

{14}    An irrevocable life insurance trust, such as the one at issue in this case, is often set up for estate planning purposes. *See id.* §§ 234, 1091.5. By giving up all "incidents of ownership," including the right to change the beneficiary, borrow or withdraw cash values, pledge the policy as collateral for a loan, retain a reversionary interest exceeding 5 percent of the value of the policy, surrender the

7

policy, cancel the policy, assign the policy or revoke prior assignments, the settlor avoids having the policy included in his estate for estate tax purposes. *Id.* § 1091.5.

{15}     When a trust is revocable and a spouse is the settlor, the trust is usually considered marital property subject to division because the settlor spouse still has control over the trust's assets, and thus has not given up all incidents of ownership. *See* Brett R. Turner, *Equitable Distribution of Property*, 3d § 6:93 (Nov. 2017) [hereinafter *Equitable Distrib. of Prop.*]; *see also id.* n.1 (citing cases where courts have refused to exclude assets held in a revocable trust from the marital estate). However, in an irrevocable trust, the settlor has given up control over the trust's assets. *See Bogert's*, *supra* § 42.

{16}     The prevailing rule in other jurisdictions is that the corpus of an irrevocable trust is not marital property subject to division in a divorce, but if either spouse has a beneficial interest in the trust, then that interest can be divided. *See Third-Party Property*, *supra* at 389, 394. The relevant question is whether a spouse has an interest in the trust's assets or control over them, not the source of the trust's assets. *See In re Marriage of Pooley*, 996 P.2d 230, 232 (Colo. App. 1999) (holding that extent of beneficiary's interest in irrevocable trust, rather than source of funds in the trust, determines whether the trust and the income from it are marital property); *McGinn v. McGinn*, 540 S.E.2d 604, 605 (Ga. 2001) (holding that irrevocable trust of which the husband was co-trustee and co-beneficiary was

8

not marital property, but that "his interest in the trust is one of his assets which is relevant to the determination of his obligations in th[e] divorce case"); *Findlen v. Findlen*, 1997 ME 130, ¶ 15, 695 A.2d 1216 (holding that the trial court could not divide the marital residence, which was placed in an irrevocable trust for benefit of husband and wife, but it could divide the parties' interest in the trust); *Caccamise v. Caccamise*, 747 A.2d 221, 226-27 (Md. Ct. Spec. App. 2000) (explaining that value of irrevocable trust created by husband for wife's benefit was marital property where the wife had a beneficial interest in the trust); *In re Chamberlin*, 918 A.2d 1, 17-18 (N.H. 2007) (holding that the corpus of an irrevocable trust was not marital property because it was not an asset belonging to either or both of the spouses at the time of their divorce, but that a spouse's right to receive interest payments from an irrevocable trust is marital property); *Guagenti v. Guagenti*, 2017-Ohio-2706, 90 N.E.3d. 297, ¶¶ 61-72 (Ohio Ct. App. 2017) (holding that irrevocable trust was not divisible marital property, but the husband's income received from the trust was); *In re Marriage of Jones*, 973 P.2d 361, 366-67 (Or. Ct. App. 1999) (holding that the trial court could not order division of property in an irrevocable trust, but could order the husband to make payment that represents the wife's share of his interest in the trust); *Wilburn v. Wilburn*, 743 S.E.2d 734, 742-43 (S.C. 2013) (holding that irrevocable trust corpus was not marital property, but the husband's right to receive distributions from trust was marital property);

9

*Endrody v. Endrody*, 914 P.2d 1166, 1169-70 (Utah Ct. App. 1996) (holding that the trial court could properly award the wife half of the husband's beneficial interest in irrevocable trust, but could not award her the trust's assets); *Chilkott v. Chilkott*, 607 A.2d 883, 884-85 (Vt. 1992) (holding that the husband's remainder interest in irrevocable trust is marital property); *see also Tobin v. Comm'r of Internal Revenue*, 183 F.2d 919, 921 (5th Cir. 1950) (holding that where spouses created irrevocable trust for benefit of family members, trust income was not community property).

{17}    When an irrevocable trust is set up for the benefit of third parties and neither spouse is a trustee or has a beneficial interest, the rule in other jurisdictions is that a trial court may not dispose of it, even if one or both of the spouses created or funded it. In a case strikingly similar to this one, *Loomis v. Loomis*, 158 S.W.3d 787 (Mo. Ct. App. 2005), the wife created an irrevocable trust with a life insurance policy to benefit her husband and children. *Id.* at 790. Upon divorce, the husband lost his status as a beneficiary, but their children retained their beneficiary status. *Id.* The appellate court held that the trust was not a marital asset subject to division because neither the husband nor the wife were trustees or beneficiaries, and neither of them had any ownership interest in the trust assets. *Id.*; *see also In re Marriage of Gebhardt*, 783 P.2d 400, 405 (Mont. 1989) (holding that irrevocable trust

10

created by husband for benefit of children was not marital property subject to division).

{18} If neither spouse is a trustee or beneficiary of an irrevocable trust, a court's equitable powers may nevertheless reach the trust's assets if the trust was set up for a fraudulent purpose (such as depriving a spouse of an equitable division of assets) or there was a fraudulent transfer of assets to the trust in anticipation of divorce (even if the trust was originally established for legitimate reasons). *See Equitable Distrib. of Prop., supra* § 6:94 (citing examples of dissolution-of-marriage cases where courts held that an irrevocable trust was being used for an improper purpose); *see also Gibson v. Gibson*, 801 S.E.2d 40, 44 (Ga. 2017) (holding that irrevocable trust was not marital property unless a spouse made a fraudulent transfer of marital property to the trust); *Nicks v. Nicks*, 774 S.E.2d 365, 372-75 (N.C. Ct. App. 2015) (holding that trial court lacked jurisdiction to order equitable division of assets conveyed by the husband and the wife to an irrevocable trust because the trust was not named as a party to the action and neither spouse had legal title to the trust, but noting that the wife would have a strong claim for imposition of a constructive trust due to the husband's control over the assets in the trust and discretion to make distributions to the wife as a beneficiary of the trust); *see also Collins v. Collins*, 2017 VT 70, ¶¶25-32, 173 A.3d 345 (determining that the change in beneficiary by settlor from the husband to the husband's son was not

11

fraudulent where trust was revocable until death of the settlor, thus trust in which the husband lost his status as beneficiary was not a marital asset subject to equitable division).

**C. Analysis**

{19} We believe the general rules, as expressed in the case law of other jurisdictions, are persuasive. We therefore hold that it was error for the district court to determine that there was a community lien interest in the corpus of the Trust. Husband does not have the power to change the Trust, because it is an irrevocable trust which he reserved no right to modify. The district court correctly noted that it did not have jurisdiction over the Trust itself because it is not owned or controlled by either spouse. Husband is not a beneficiary or a trustee and does not have a property interest in the Trust. Husband also testified that he is not able to access the assets of the Trust. Wife is also not a beneficiary or a trustee and has no property interest in the Trust because she lost her beneficiary status upon divorce. The parties regarded the community funds used to pay the life insurance premiums as gifts and treated them as such for tax purposes. No argument has been made that Husband set up the Trust for an improper or fraudulent purpose, or that he made any fraudulent transfers to the Trust for the purpose of safeguarding assets

12

from division in the divorce. Although Wife relied on, and the district court seemed to have been motivated by, the possibility that the trustee, Husband's father, might use the funds in a way that would unfairly benefit Husband, Wife offered no evidence that the trustee had ever acted improperly in any respect. Wife's concerns are therefore unsupported and speculative. Moreover, no evidence was presented that Wife was defrauded or fooled into paying the life insurance premiums from community funds. We further acknowledge Wife's concern that Husband may remarry, and that under the terms of the Trust, her children could lose any interest they have in the corpus of the Trust, or that the assets of the Trust might be depleted through distributions the trustee could make to Husband if he finds it is in the best interests of the children or of Husband's future spouse. While we sympathize with Wife's position, the Trust was set up for legitimate reasons, and we see no reason why it should not be enforced as written.

{20}     The district court's ruling creates unnecessary problems. It subjects Husband to significant personal liability based on assets over which he has no control and from which he may never benefit. Further, if Wife were to file a new lawsuit seeking to obtain assets from the Trust, then neither the trustee, nor the beneficiaries, nor the next district court judge will be bound by the district court's ruling in this case. This issue was briefly discussed the first time this case was on appeal. *See VanderLugt*, No. 32,950, ¶ 9 ("[E]ven if Husband and Wife were to

13

agree that Wife will be paid a share of the policy pursuant to one of the district court's suggested methods of terminating or modifying the irrevocable trust, Wife cannot enforce such an agreement until it is binding on all of the parties required to terminate or modify the trust."). This could subject Husband to conflicting obligations.

{21} Wife urges this Court to conclude that it would be inequitable not to allow her to recover an interest in the Trust. But "[e]quity jurisdiction has never given the judiciary a roving commission to do whatever it wishes in the name of fairness or public welfare." *United Props. Ltd. Co. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 19, 134 N.M. 725, 82 P.3d 535 (internal quotation marks and citation omitted). Wife failed to show that she or Husband has any beneficial interest in the Trust, or that there was any fraudulent conduct with respect to the Trust that could justify a court in invoking its equitable powers. There was no showing by Wife that the Trust was community property or even Husband's separate property. Instead, it is undisputed that the legal owner of the Trust is the trustee, and the beneficial owners are the parties' children. The powers of equity cannot disturb their ownership in a proceeding to which they are not parties.

{22} Wife relies on *Riechers v. Riechers*, 679 N.Y.S.2d 233 (N.Y. Sup. Ct. 1998), *aff'd*, 267 A.D.2d 445 (N.Y. App. Div. 1999) for the proposition that a court may divide an irrevocable trust in a divorce. But in *Riechers*, the New York court only

14

divided the "value" of the trust, which, the court noted, had likely been set up for fraudulent purposes. *Id.* at 234-36. *Riechers* is thoroughly consistent with the general principles outlined above, on which we rely.

{23}     Further, Wife's attempt to distinguish *Loomis* by arguing that its holding was abrogated by two later cases, *Seggelke v. Seggelke*, 319 S.W.3d 461 (Mo. Ct. App. 2010), and *Jenkins v. Jenkins*, 368 S.W.3d 363 (Mo. Ct. App. 2012), fails. These cases merely hold that if a spouse has an equitable interest in a trust, that interest is subject to division. *Seggelke*, 319 S.W.3d at 467; *Jenkins*, 368 S.W.3d at 367-368. That is not the case here.

{24}     Additionally, Wife's reliance on *Janosek v. Janosek*, 2007-Ohio-68 (Ohio Ct. App. 2007), is misguided. *Janosek* has few facts and little analysis, and is an unpublished, non-precedential opinion. Thus, it is not persuasive when compared to the great weight of legal authority supporting the opposite position.

{25}     This divorce proceeding, in which neither the trustee nor the Trust's beneficiaries were joined, is not the proper avenue for pursuing any potential remedy to address Wife's desire to protect her children's (the current sole beneficiaries) interest in the Trust. *See Collins*, 2017 VT 70, ¶ 28. Our decision is without prejudice to any claim that Wife or the current beneficiaries may assert to seek modification or termination of the Trust in accordance with New Mexico law in a proceeding where the trustee and all beneficiaries are joined. *See* NMSA 1978,

15

§46A-4-410 (2003) (allowing for modification or termination of trust in certain circumstances); NMSA 1978, § 46A-4-411 (2007) (same). We express no opinion on whether Wife or the beneficiaries are entitled to such relief.

{26}	We reverse the decision of the district court and hold that the community does not have a community lien interest in the life insurance policy that is the corpus of the Trust. Having so held, we need not consider Husband's claim that the district court should not have allowed Wife's expert witness to testify about the Trust.

**II.	The district court did not abuse its discretion by restricting Husband's discovery into Wife's business interests**

{27}	Husband argues that the district court improperly restricted his discovery into Wife's business enterprises. The parties stipulated that Wife's interest in four Cervantes family businesses, two of which she obtained during the marriage, were Wife's separate property, but reserved for trial the question of whether there was a community lien in the Cervantes businesses. Husband argues that it was improper for the district court to refuse to allow discovery into the source and amount of Wife's income because Husband argued that Wife still owed money and interest for credit card charges incurred by the community to pay expenses for her businesses. Husband argues that information regarding Wife's retirement funds, deferred compensation, other benefits, assets earned during marriage, and any matters related to Wife's ownership of these businesses and resulting income, were

16

discoverable for purposes of dividing property and setting child support. Husband argues that this information was particularly relevant because he discovered an unsigned loan application in which Wife stated that her income was greater than what she represented to the court. Husband argues that the court made determinations regarding the parties' businesses and debts without having all of the information needed to do so.

{28} Wife argues that all of relevant financial information was produced because she provided her W-2s, K-1s, 1099s, pay stubs, and a statement on her 401(k)/Rollover IRA. Wife also provided documents and information about the creation, ownership, and purposes of the Cervantes businesses; the PRC Entity Detail for the businesses; documents related to health, dental, and vision insurance provided by the businesses; a statement of the loans Wife received from the businesses; a summary of insurance coverage for two of the businesses; a check register for Wife's reimbursements; and backup documentation and multiple emails and credit card statements. She did not provide information about the interests of other shareholders, partners, owners, or employees in those businesses, or the internal accounting, tax, and business records of those businesses.

{29} At the outset of this case, in December 2010, the district court ordered Wife to produce her W-2s, her K-1s, her 1099s, and certain organizational information, but declined to order production of the tax returns of the other members of the

17

Cervantes businesses. Later, in February 2012, the district court did not order the production of the internal records of the Cervantes businesses because it believed that Wife's interest in them could be ascertained without them. Wife's counsel stated, without contradiction, that Wife worked for one of those businesses and that her income and its method of calculation had been disclosed to Husband. The district court noted that the parties were filing joint tax returns, which would have required reliance on Wife's W-2s, K-1s, and 1099s from the businesses. After a hearing, the district court entered an order concluding that "[t]here is no indicia why the entity financials are discoverable at this time." About nine months after that, the district court sent an email to the parties explaining that the only issue is what Wife's interests in the entities are and stated that these could be shown without an examination of the "internal financials" of the Cervantes businesses.

**{30}** We review a district court's discovery orders for an abuse of discretion. *See Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 6, 139 N.M. 671, 137 P.3d 611. "[A]lthough the rules favor allowance of liberal pretrial discovery, the trial court is vested with discretion in determining whether to limit discovery." *Villalobos v. Bd. of Cty. Comm'rs of Doña Ana Cty.*, 2014-NMCA-044, ¶ 16, 322 P.3d 439 (internal quotation marks and citation omitted).

**{31}** Husband's first argument is that the district court should have allowed more discovery because Wife used the parties' personal credit card to pay for $400,000

18

in business expenses of the Cervantes businesses, which were never repaid. Husband argues that the community had a claim against Wife's businesses, and greater discovery should have been allowed so that he could prove that claim. But Husband does not explain why he could not have proven the existence of the debt through the community's financial records. For example, Husband could have used the credit card statements themselves to identify the charges that he contended were incurred to pay expenses of the Cervantes businesses. We agree with the district court's conclusion that "[c]ommunity claims against separate entities can be proven without an evaluation of the separate entities."

{32} Husband also claims that he had a right to discover information about Wife's actual income earned for the purposes of dividing property and setting child support. But Wife's income from the Cervantes businesses would necessarily have been reflected on the W-2s, K-1s, and Form 1099s that were produced to Husband. *See, e.g.*, *Black's Law Dictionary* 1811 (10th ed. 2014) (stating that a "W-2 form" is "[a] statement of earnings and taxes withheld (including federal, state, and local income taxes and FICA tax) during a given tax year"); *Irish v. Ferguson*, 970 F. Supp. 2d 317, 336 n.15 (M.D. Pa. 2013) ("A Schedule K-1 is a tax form used to report a taxpayer's portion of a corporation's income or loss which passes to the taxpayer as a shareholder of the corporation."); *Ginter v. United States*, 815 F. Supp. 1289, 1291 (W.D. Mo. 1993) (stating that Form 1099 contains information

19

about "nonemployee compensation"). As for Husband's claim that information about Wife's businesses was needed to establish the appropriate amount of child support under NMSA 1978, Section 40-4-11.1(C)(2)(b) (2008), the child support issues were resolved before trial by a stipulated court order.

{33} Husband claims that the information he received was insufficient to show what Wife's actual income was because he found an unsigned loan application in Wife's name that reported a higher income than that which she had represented to the district court. The district court rejected reliance on this application because it was unsigned. We note that the district court was free to do so. *See Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 14, 123 N.M. 60, 933 P.2d 859 ("The determination of relevancy, as well as materiality, rests largely within the discretion of the trial court.").

{34} Finally, Husband argues that "[i]n spite of the lack of discovery concerning business financials, the district court ordered Husband to pay Wife $12,441.50 for one-half of an alleged overpayment by Cervantes Enterprises in connection with a credit card reimbursement that was raised for the first time at trial." Husband does not, however, explain what additional information would have been relevant to this claim. We will not review undeveloped claims. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review

20

unclear arguments, or guess at what [an appellant's] arguments might be."). We affirm the district court's discovery rulings.

**III.    The district court did not err in its division of the proceeds from Husband's separate property**

{35}    Husband claims that the district court erred by finding that Wife had separate and community lien interests in the proceeds of the sale of a house on Loma Verde Lane in Las Cruces (Loma Verde) that was his separate property, as opposed to Wife only having a community lien on the pay down of the mortgage principal. We review the district court's findings for substantial evidence. *See Galloway v. White*, 1958-NMSC-116, ¶¶ 10, 12, 64 N.M. 470, 330 P.2d 553 (reviewing the amount of a community lien against a spouse's separate property under a substantial evidence standard). "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "In reviewing a sufficiency of the evidence claim, this Court views the evidence in a light most favorable to the prevailing party and disregards any inferences and evidence to the

21

contrary." *Weidler v. Big J Enters.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (alteration, internal quotation marks, and citation omitted).

{36}  As we understand it, Husband's claim is three-fold. First, he asserts that it was error for the district court to award Wife more than reimbursement for principal reduction on the Loma Verde mortgage. Second, Husband claims that the district court erred by awarding Wife a separate interest in proceeds from the sale of Loma Verde. Third, Husband argues that money paid to his separate business, Aldershot of New Mexico, Inc. (Aldershot), from the Loma Verde proceeds was to pay a community debt owed to Aldershot, and Wife was not entitled to reimbursement for those payments. We address each argument in turn.

**A.    Facts relevant to Loma Verde and the district court's decision**

{37}  Before the marriage, in May 1991, Husband purchased Loma Verde for $303,384.75 ($311,763.83 with closing costs). Between the purchase date and the date of the marriage, Husband reduced the principal mortgage balance on Loma Verde to $169,394. When the parties married, Loma Verde was worth $330,000. The parties made regular monthly mortgage payments on Loma Verde from their joint checking account.

{38}  In June 1999, Wife sold some of her separate property and received proceeds of $21,788, which was deposited into the parties' joint checking account. One year later, in June 2000, the parties made a $10,000 payment to reduce the principal of

22

the Loma Verde mortgage. Wife admitted that she could not trace this $10,000 payment to the proceeds from the sale of her separate property in June 1999.

{39}     In October 2000, Wife sold some income-producing apartments, which were her separate property, and received $74,830 from the sale. A week later, a payment of $67,500 was made towards reducing the principal of the mortgage on the Loma Verde property using the proceeds from the sale of Wife's separate property. By selling the apartments, Wife lost future rental income, and by using the proceeds from that sale to pay down the principal on Loma Verde, Wife reduced the amount of interest that Husband would have had to pay to service the Loma Verde mortgage. In December 2000, the parties made another payment of $12,000 from their joint checking account toward the principal of the mortgage on the Loma Verde property.

{40}     Several years later, in December 2004, the parties received a reimbursement check for $41,717 in connection with a bridge loan used to purchase their marital residence on Remington Road in Las Cruces. That same day, Husband wrote a check from the parties' joint bank account to his separate business, Aldershot, for $53,000.

{41}     The parties sold Loma Verde in September 2005 for $465,000. The parties used $172,847 of the proceeds from the sale to pay off the Remington bridge loan, and $23,089 to pay the closing costs, which left $267,075 for the parties. Four days

23

after the sale, Husband wrote a check from the parties' joint bank account to Aldershot for $260,000. At trial, Husband testified that this check was to pay back $150,000 that the parties had borrowed from Aldershot.

{42} The parties stipulated that Husband and Wife each had a separate interest in the proceeds from the sale of Loma Verde, and that the marital community also had a lien interest in the proceeds, but disagreed on the amount of the liens. The stipulation does not expressly state whether the parties intended to give Wife an interest in the equity value of the property, but Husband later claimed that was not his intention. Husband concedes that Wife was at least entitled to a community lien for the payments that the parties made from their joint checking account toward reduction of the mortgage principal.

{43} At trial, Wife asked that she be reimbursed for her portion of the Loma Verde proceeds ($313,000) that were used to pay Aldershot. Wife's expert accountant, Ed Street, calculated that she was entitled to a 35.89 percent interest in the Loma Verde proceeds, combining her separate lien interest and her half of the community lien interest, thus entitling her to $112,335.70. Wife's expert assumed that she was entitled to a percentage of the appreciation equity in the home, as opposed to just the amounts used to pay down the mortgage principal. The district court accepted the figure offered by Wife's expert witness, and awarded Wife $112,335.70.

24

**B.** **New Mexico law governing the apportionment of separate and community interests in a spouse's separately-owned property**

{44} In New Mexico, "property acquired by either spouse before marriage" is separate property. NMSA 1978, § 40-3-8(A)(1) (1990). As we previously noted, separate property includes the "rents, issues and profits" of that property. *Portillo*, 1981-NMSC-119, ¶ 12. Any increase in the value of separate property which is attributable to an increase in market value or natural growth belongs to the owner of the separate property. *Bayer*, 1990-NMCA-106, ¶ 21. The marital community, however, may obtain an interest in the increase in value of a spouse's separate property to the extent that the increase is attributable to community funds or labor. *Trego*, 1998-NMCA-080, ¶ 13. Apportionment of that increase in value between the spouses upon divorce "is appropriate only when an asset has been acquired or its equity value increased through the use of both separate and community funds." *Martinez v. Block*, 1993-NMCA-093, ¶ 13, 115 N.M. 762, 858 P.2d 429. To disallow apportionment when a spouse performs substantial labor to greatly increase the value of the separate property of the other spouse "would do substantial injustice." *Portillo*, 1981-NMSC-119, ¶ 18. Apportionment is an equitable remedy, and New Mexico law does not dictate that a district court use any particular method of apportionment; the overriding aim is to achieve "substantial justice" between the spouses. *Dorbin v. Dorbin*, 1986-NMCA-114, ¶ 25, 105 N.M. 263, 731 P.2d 959.

**C. Wife was entitled to a share in the appreciation equity in Loma Verde because the increase of Husband's equity in the property was attributable in part to the expenditure of her own separate funds**

{45} Husband claims that the district court erred by awarding Wife a share in the appreciated equity of Loma Verde, thereby failing to award him his full separate interest in the Loma Verde proceeds. Loma Verde increased in value from $330,000 at the time of the marriage to $465,000 when it was sold in 2005. Although Husband acknowledges that he stipulated that Wife had a separate lien in the property, he now claims that Wife was not actually entitled to any award for that interest because she did not show that she contributed to the increase in Loma Verde's value. Accordingly, Husband argues that Wife was not entitled to any share of the equity appreciation, but only to her share of the community lien on Loma Verde to the extent that the parties used community funds to reduce the mortgage principal.

{46} Husband's claim lacks merit. Here, the district court did not award Wife more than reimbursement for the principal reduction on Loma Verde because it thought she contributed to the increase in Loma Verde's value on the open market. Rather, the district court made findings of fact, which Husband does not challenge, that Wife sold her separate, income-producing apartments in 2000, thus foregoing future rental income that would have belonged solely to her, and used $67,500 from that sale to pay down the principal on Loma Verde, thus decreasing the total

amount of interest that Husband would have had to pay on the mortgage. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal."). If Wife had not done so, Husband would have been obligated to continue paying interest on that portion of the mortgage principal, thus reducing the net proceeds available when Loma Verde was ultimately sold in 2005. Wife's action therefore increased the "equity value" of Husband's separate property, even if it did not increase Loma Verde's price on the real estate market. *See Martinez*, 1993-NMCA-093, ¶ 13 (stating that apportionment is appropriate when increase in "equity value" of property is attributable to expenditure of community or separate funds).

{47} The district court also properly decided to compensate Wife for the sacrifice of the income-producing capacity of her own separate property to increase the value of Husband's separate property. In *Portillo*, our Supreme Court held that a husband's work to improve his wife's separate property, which increased the value of that property, entitled him to a community share of that increased value, and that to deny him that share "would do substantial injustice." 1981-NMSC-119, ¶ 18. To be sure, in *Portillo* the husband's labor was community property, while in this case Wife contributed separate property, but Husband offers no reason why the rule in *Portillo* should not apply to Wife's contribution here. Moreover, the principal aim of apportionment is to achieve "substantial justice" among the parties, *see Dorbin*,

27

1986-NMCA-114, ¶ 25, but Husband offers no argument why compensating Wife for her contribution is unjust, nor does he offer any argument that justice requires that he be allowed to retain the value of Wife's contribution.

{48}    Husband also argues that because some money from the sale of Loma Verde "was used to pay the bridge loan" for the parties' marital residence on Remington Road, "it is not subject to reallocation" because "community money was used to pay a community debt." Husband does not explain why these facts should change the district court's decision and cites no supporting authority, and thus we hold that this argument is waived as undeveloped. *See Headley*, 2005-NMCA-045, ¶ 15 ("We will not review unclear arguments, or guess at what [an appellant's] arguments might be.").

{49}    Finally, Husband argues that "proceeds from the sale of Wife's separate properties were commingled with community funds in the parties' joint account[,]" thus causing the separate funds to lose their character as separate property, meaning that the district court erred by finding that Wife had a separate lien interest. With respect to the $67,500 reduction of principal in 2000, the parties stipulated that this payment came from the sale of Wife's separately owned apartments, and Husband may not retract that stipulation on appeal. *See Olguin v. Manning*, 1986-NMCA-102, ¶ 7, 104 N.M. 791, 727 P.2d 556 ("Courts generally honor stipulations between the parties and uphold such agreements concerning trial

of a cause or conduct of litigation if the stipulations are not unreasonable, not against good moral standards or sound public policy, and are within the general sense of the pleadings." (internal quotation marks and citation omitted)). With respect to the $10,000 mortgage payment made in June 2000 from the parties' joint checking account, Husband argues that this payment could not be traced to Wife's deposit of $21,788 in June 1999 from the sale of other separate property. Wife argues, however, that even if the $10,000 principal reduction should not have been credited to her, it does not matter because even if that amount is disregarded, other evidence still supports the amount of money that the district court awarded to her. Husband does not dispute this argument in his reply brief and has thus conceded the issue. *See N.M. State Inv. Council v. Weinstein*, 2016-NMCA-069, ¶ 39, 382 P.3d 923 (holding that where appellant fails to address in its reply brief an issue raised in the answer brief, this Court may consider "such a failure to respond [as] constitut[ing] a concession on the matter" (internal quotation marks and citation omitted)). We therefore conclude that even if Wife was not entitled to apportionment for the $10,000 reduction in principal in June 2000, the district court's error on that point was harmless. An error is harmless unless the complaining party can show that the district court's action was inconsistent with substantial justice or that it affected the substantial rights of that party. *See* Rule 1-061 NMRA.

**D.  Husband's claim that the money paid to Aldershot was to repay a community debt owed to Aldershot lacks merit**

{50}  In December 2004, after the parties received a reimbursement check for $41,717 in connection with the bridge loan used to purchase the Remington home, Husband wrote a $53,000 check from the parties' joint bank account to his separate business, Aldershot. Then, after the sale of Loma Verde in 2005, Husband used $260,000 of those proceeds to pay Aldershot. Wife testified that she was never compensated for her share of these payments. The district court found that Wife was entitled to a percentage of the proceeds Husband used to pay Aldershot. The district court concluded that it would be inequitable for Husband to retain the $260,000 from the sale of Loma Verde because Wife had separate and community lien interests in those proceeds. The district court also found that it would be inequitable for Husband to retain the $53,000 from the initial financing of the Remington home and for Wife to receive no reimbursement of her one-half interest because the parties were jointly responsible for the Remington debt.

{51}  On appeal, Husband claims that the district court erred because any money Wife was entitled to from the sale of Loma Verde was used up in the course of paying off the community's debt to Aldershot, so there was no money left for the district court to distribute. We review this claim to determine whether substantial evidence supported the district court's findings. *See Roybal v. Morris*, 1983-NMCA-101, ¶ 30, 100 N.M. 305, 669 P.2d 1100 ("On appeal, we are bound by the

trial court's findings of fact unless they are demonstrated to be clearly erroneous or not supported by substantial evidence.").

{52} Husband argues that he paid the $53,000 and $260,000 to Aldershot for loans that Aldershot made to the community and that the evidence was "undisputed" that at least the $53,000 payment was to repay a loan from Aldershot. But as Wife correctly points out and as the district court found, Husband did not explain how he calculated the amounts he claimed were owed to Aldershot, he did not trace any amounts borrowed from Aldershot to particular expenditures for the community, nor did he offer any documentary evidence to support his claims, choosing instead to rely solely on his oral testimony. The district court was entitled to, and did, reject Husband's testimony. *See Zemke v. Zemke*, 1993-NMCA-067, ¶ 15, 116 N.M. 114, 860 P.2d 756 ("Where oral testimony is involved, it is well established that only the trier of facts may weigh evidence, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of witnesses, and decide where the truth lies." (alteration, internal quotation marks, and citation omitted)). We reject Husband's claim.

**CONCLUSION**

{53} For the foregoing reasons, we reverse the district court's ruling that Wife had an interest in the irrevocable trust, we decline to decide whether Wife's expert

should have been allowed to testify, and we affirm the district court with regard to all other issues.

{54}    **IT IS SO ORDERED.**


_____
                                   **EMIL J. KIEHNE, Judge**


**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**JULIE J. VARGAS, Judge**